## A03A2027. RTS LANDFILL, INC. et al. v. APPALACHIAN WASTE SYSTEMS, LLC et al.
### (598 SE2d 798)

MIKELL, Judge.

Pursuant to an asset purchase agreement executed on December 31, 1996, RTS Landfill, Inc. ("RTS"), formerly known as Sanifill of Georgia, Inc. ("Sanifill"), sold one of its operating divisions, Starr Sanitation ("Starr"), a solid waste collection, hauling, recycling, and transfer station business, to Appalachian Waste Systems, LLC ("Appalachian"), a company wholly owned and formed by Gerald S. Proctor and Sheryl D. Proctor, who were then employed by RTS's parent company, to complete the acquisition. The asset purchase agreement granted RTS a preemptive right of first refusal. In addition, the parties executed a separate Disposal Agreement. This appeal concerns the enforceability of those provisions. Specifically, RTS appeals from a series of orders declaring the provisions unenforceable and granting injunctive relief to Appalachian. For the reasons set forth below, we affirm the ruling that the preemptive right was unenforceable, but reverse the grant of declaratory relief to Appalachian with regard to the Disposal Agreement. The relevant facts follow.

The first provision in dispute, Section 1 of the Disposal Agreement, requires Appalachian to deliver "all nonhazardous solid waste under its control and custody" to Pine Bluff Landfill, Inc., a site owned by RTS, through December 31, 2002. The Disposal Agreement, which "automatically terminate[s] upon the sale of the interests or assets of" Appalachian, was renewed through the end of 2008.

The second clause in dispute, entitled "Seller's Right of First Refusal and Repurchase Option," provides in pertinent part as follows:

> Purchaser and the Owners [(Appalachian and the Proctors)] hereby grant Seller [(RTS)] . . . a right of first refusal and the option to purchase any or all of the Purchase Assets and any or all of the membership interests in Purchaser, in the event that Purchaser receives and desires to accept any bona fide offer from a third party (an "Offer"). . . . Seller's right pursuant to this Section 1.3 shall entitle Seller to purchase the assets at a price equal to the Offer *less* $500,000. Upon

receipt of any such Offer, Purchaser shall provide written notice to Seller, which shall identify the third party offeror and attach a copy of such Offer. Receipt of such notice shall activate Seller's option. Upon receipt, Seller shall have thirty (30) days thereafter to notify Purchaser of its intent to purchase the subject assets or interests pursuant to the same general terms of the third party Offer and at the price stated herein. The closing shall occur no later than thirty (30) days thereafter.

Invoking the above-cited clause, Appalachian notified RTS on December 3, 2002, that it had received an offer from Advanced Disposal Services North Georgia, LLC ("Advanced"), to purchase a 20 percent membership interest in Appalachian for $2.5 million. RTS claimed that the notice did not contain sufficient information to permit RTS to evaluate the offer and determine whether to exercise its right of first refusal. The parties reached an impasse, and on January 3, 2003, RTS filed suit against Appalachian and the Proctors, seeking an injunction to block the sale and damages for breach of contract. Four days later, RTS filed a motion for a temporary restraining order and for expedited discovery pursuant to OCGA §§ 9-11-30 (a) and 9-11-34 (b) (2).

On January 9, 2003, Appalachian answered and counterclaimed, seeking declaratory and injunctive relief. Appalachian asked the court to declare the right of first refusal, as well as Section 1 of the Disposal Agreement, unenforceable. In addition, Appalachian filed a motion to dismiss the complaint, or, alternatively, for judgment on the pleadings, a TRO, and an interlocutory injunction prohibiting RTS from seeking to enforce the two provisions in dispute. Finally, Appalachian moved for an expedited determination under Uniform Superior Court Rule 6.7.

The trial court held a hearing on January 23, 2003, and issued a TRO, essentially maintaining the status quo for 30 days. The court also ordered RTS to post a $2 million bond, and RTS complied. On February 10, RTS filed a motion to dismiss Appalachian's declaratory judgment counterclaims based on the Disposal Agreement, contending that there was no justiciable controversy with respect thereto.

On February 18, the trial court issued a rule nisi, setting "all of the parties' motions which were on file as of February 10, 2003," for a hearing on February 21.[1] RTS proceeded first at the hearing, calling

---

[1] At the outset of the proceeding, there appeared to be some confusion as to which motions the court would hear. Counsel for RTS stated, "I think the motion before the Court . . . is the respective interlocutory injunctions sought by the parties." Counsel for Appalachian replied,

several witnesses to testify concerning whether Appalachian had provided sufficient data to enable RTS to exercise its right of first refusal. Direct testimony concerning the Disposal Agreement was limited to showing that the disposal rate was favorable to Appalachian. On cross-examination, one witness testified that he was not aware of any territorial limitation on Appalachian's obligation to bring "qualifying" waste to the Pine Bluff Landfill. On redirect, the witness testified that the Proctors had approached RTS and requested that the Disposal Agreement be amended to forego a contractual price increase and to clarify that it would terminate upon the sale of "any or all" of the membership interests in Appalachian. RTS agreed to the price concession but not the wording change. Appalachian did not disclose that it was involved in discussions with Advanced at the time. After RTS rested, Appalachian called two witnesses, Gerald Proctor and Herman Clark, the attorney who notified RTS of Advanced's offer. During Proctor's testimony, the court called a sidebar conference, announced that it had reached a decision, and stated that it would permit RTS to perfect the record. RTS called an additional witness, who testified to facts material to the Disposal Agreement.

After that testimony, the trial court announced its intention to issue a declaratory judgment and an interlocutory injunction to Appalachian. Relying on the authority cited in Appalachian's brief, the court ruled that the right of first refusal was unconstitutionally overbroad in light of *Shiver v. Benton*,[2] which noted that the method of setting the price is a critical factor in deciding whether a right of first refusal is an unlawful restraint on alienation,[3] and 1983 Ga. Const. Art. III, Sec. VI, Par. V (c), which prohibits the legislature from authorizing contracts in general restraint of trade. The court found that the $500,000 discount provided to RTS amounted to 62.5 percent of the price Appalachian paid for Starr and, therefore, was an unreasonable penalty. As to the Disposal Agreement, the trial court found that its lack of a territorial restriction rendered it overbroad as a matter of law.

Following the hearing, the court issued a series of five orders, dismissing RTS's complaint, granting Appalachian's motion for an interlocutory injunction and expedited declaratory relief, denying RTS's motion to dismiss the claims for declaratory relief as to the

---

"there is our motion as well." During opening statements, counsel for Appalachian stated that "the motion before the Court now is to specifically enforce" the right of first refusal. Counsel argued that the evidence that RTS intended to present was irrelevant and that the preemptive right was an unreasonable restraint on alienation as a matter of law.

[2] 251 Ga. 284 (304 SE2d 903) (1983).

[3] Id. at 285.

Disposal Agreement, dissolving the TRO and denying RTS's motion for an interlocutory injunction, and granting injunctive relief to Appalachian. RTS appealed those orders to the Supreme Court, which transferred the appeal to this Court. Shortly after RTS filed its notice of appeal, the trial court supplemented its order denying RTS's motion for an interlocutory injunction with additional findings of fact and conclusions of law.

With regard to the initial five orders, RTS alleges that the trial court committed three errors: (1) declaring the right of first refusal unenforceable as a matter of law, (2) reaching a final determination on the merits of the controversy at the motions hearing, and (3) declaring the Disposal Agreement unenforceable as a matter of law. In addition, RTS filed supplemental enumerations of error after the record on appeal was supplemented to reflect RTS's motion to amend the court's findings of fact and proceedings held thereon.

1. RTS first argues that the trial court erred in ruling, as a matter of law, that the right of first refusal constituted an unlawful restraint on alienation under *Shiver v. Benton*.[4] In *Shiver*, the Supreme Court stated that the method of setting the price is critical to deciding whether a right of first refusal, which is more accurately termed a preemptive right, is a direct restraint on alienation.[5]

> If the holder of the preemption right is merely entitled to meet the offer of an open market purchaser, there is little clog on alienability. But if he has a right to purchase at a fixed price, or at a reduced price from that offered in the market, it is likely to involve a sacrifice by the owner in order to alienate the property. Hence, it becomes a far more serious interference with alienability.[6]

The Court held that the right of first refusal under consideration was not a restraint on alienation, reasoning that because it was "not tied to . . . some method of pricing which may not reflect true market value, but is conditioned upon meeting a sale price which the seller is willing to accept, the Agreement encourages the development of the property to its fullest potential."[7]

---

[4] *Supra.*

[5] *Id.* at 285.

[6] (Punctuation omitted.) *Id.* at 285-286 (1), citing Simes & Smith, The Law of Future Interests, § 1154, pp. 62, 63 (2d ed. 1956).

[7] *Shiver,* supra at 286. Accord *Hinson v. Roberts,* 256 Ga. 396, 398 (2) (349 SE2d 454) (1986) (preemptive right unlimited in duration does not violate rule against perpetuities if it requires merely matching the offer of a third party); *Cambridge Co. v. East Slope Investment Corp.,* 700 P2d 537, 542 (Colo. 1985) (preemptive right at market price poses little interference with alienation).

*Shiver* concerned an interest in real property. The interest at issue in the present case, a membership interest in a limited liability company, is deemed personal property under Georgia law.[8] No Georgia case addresses restraints against the alienability of such an interest,[9] but it appears that restraints on alienation of personal property are disfavored. "It is the policy of the law to encourage free alienability of property, and attempts to remove either land or chattels from circulation in trade are discouraged not only by the rule against perpetuities, . . . but by the rule against unreasonable restraints on alienation."[10]

RTS argues that *Shiver* does not stand for the proposition that restraints on alienation are unlawful if they permit the holder of the right to purchase the property at a discount. Rather, RTS contends, the court must determine whether the discount is reasonable under the circumstances. In support of its argument, RTS relies on *Colby v. Colby*,[11] in which the Vermont Supreme Court upheld a repurchase option at a fixed price of $500 for property with a market value of $90,000. But in that case, the original price for the property was nominal, and the option price restored the original nominal consideration as well as repaid the option holders for sums spent on improvements by themselves and their ancestors.[12] In addition, the property transfer was intended for the enjoyment of the descendants. The case is inapposite in the context of this arms-length commercial transaction.

However, other jurisdictions apply similar factors in deciding whether a preemptive right is reasonable. In New York, for example the "reasonableness of . . . preemptive first refusal rights . . . depend[ ] upon their duration, price and purpose."[13] Similarly, the Supreme Judicial Court of Maine considers "1) the purpose for which the restraint is imposed; 2) the duration of the restraint; and 3) the method of determining the price."[14] That court held that because the preemptive right of first refusal at issue was limited by a fixed price

---

[8] OCGA § 14-11-501 (a).

[9] But see *Hinson*, supra at 397, n. 1, citing *Radio Webs, Inc. v. Tele-Media Corp.*, 249 Ga. 598, 600 (1) (292 SE2d 712) (1982) (addressing right of first refusal to purchase stock or assets of a corporation, but not in context of restraint against alienation).

[10] (Citations omitted.) *Dyer v. Dyer*, 275 Ga. 339, 341 (1) (566 SE2d 665) (2002). Compare *Ricketson v. Metts*, 173 Ga. App. 606, 610-611 (327 SE2d 570) (1985) (Beasley, J., dissenting) ("the law's disfavor towards restraints on alienation relates more to conditions in deeds and wills, which are unilateral attempts to restrain the power of alienating the legal title to the fee of land").

[11] 596 A2d 901 (Vt. 1990).

[12] Id. at 903-904.

[13] *Wildenstein & Co. v. Wallis*, 584 NYS2d 753, 759 (II) (B) (1992).

[14] (Citation omitted.) *Low v. Spellman*, 629 A2d 57, 59 (Me. 1993).

and endured forever, it violated the rule against perpetuities.[15]

The Maine court relied in part on *Hartnett v. Jones*.[16] In *Shiver*, our Supreme Court cited *Hartnett*, as well as *Robroy Land Co. v. Prather*,[17] for the proposition that a preemptive right which is unlimited in duration does not violate the rule against perpetuities as long as the pricing method is based upon matching the offer of a third party.[18] Instead, *Shiver* held that the right must be enforced within a reasonable time.[19] RTS argues that its preemptive right should be reformed to require performance within a reasonable time. Based on its pricing method, however, we cannot agree.

We resolve the issue in the case at bar in light of *Shiver* and complementary foreign authorities. *Shiver* held that a preemptive right conditioned upon meeting a price that is acceptable to the property owner is not a restraint on alienation. In this case, we are faced with the converse of that proposition. Our question is whether a preemptive right which sets a price less than what is offered by a third party is void per se as a restraint on alienation. We believe that *Shiver* does not call for an inflexible rule. Based on the guidance provided by foreign authorities, we conclude that, in determining the validity of a preemptive right, a court must take into consideration its duration, price, and the purpose for which it was imposed. Applying these factors to the case at bar, we hold that the preemptive right granted to RTS fails the first two prongs of this test because it is unlimited in duration and sets a price of $500,000 less than what a third party might offer. As for the third prong, the trial court found as a fact that no legitimate business reason existed for the $500,000 discount. Testimony at the hearing reflected that no witness for RTS was aware of the rationale behind the discount. Moreover, RTS moved to quash Appalachian's subpoena for the individual who had personal knowledge of the transaction, and he did not testify at the hearing. According to Proctor's testimony, the individual was his boss, Miller Matthews. Matthews had advised Proctor to consider purchasing Starr and had informed Proctor that his job was in jeopardy. Proctor further testified that the $800,000 purchase price accurately represented the value of Starr; that it was a "fair deal" for both the Proctors and RTS; and that although the Proctors would have preferred to exclude the right of first refusal, they understood that it was a condition of RTS performing the transaction. This evidence supports the trial court's finding as to the third prong of the

---

[15] Id. at 58.
[16] 629 P2d 1357 (Wyo. 1981).
[17] 622 P2d 367 (Wash. 1980).
[18] *Shiver*, supra at 287.
[19] Id. at 288 (1).

test. Therefore, the court did not err in determining that the preemptive right of first refusal was unenforceable.

2. RTS next contends that the trial court erred in reaching a final determination as to the validity of the preemptive right at the hearing on the parties' motions. Pending at the time of the hearing were the parties' cross-motions for failure to state a claim pursuant to OCGA § 9-11-12 (b) (6) and for interlocutory relief. If, as happened in the case sub judice, the trial court considers matters outside of the pleadings during the hearing on a motion to dismiss, "the motion shall be treated as one for summary judgment and disposed of as provided in Code Section 9-11-56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by" that Code section.[20] Similarly, the trial court has the authority to convert an application for interlocutory injunction to a motion for summary judgment, but it cannot do so without complying with OCGA § 9-11-56 (c) and without an opportunity for a hearing on summary judgment.[21] Finally, under OCGA § 9-11-65 (a) (2), when a trial court has given notice of a hearing on an interlocutory injunction, the court may determine the merits of the issues after the interlocutory hearing.[22] But a court may do so only "if the parties have not objected or have acquiesced."[23]

In this case, although not specifically stated in any of its six orders, the trial court essentially converted the motions to dismiss into motions for summary judgment. The court was required to give RTS notice of this conversion and at least 30 days to respond. But these procedural requirements can be waived.[24] RTS called numerous witnesses who testified in its behalf concerning the preemptive right and was certainly aware that the trial court would consider evidence independent of the pleadings. This constitutes either a waiver or acquiescence in the procedure, and does not warrant reversal.[25]

3. RTS next argues that the trial court erred in denying its motion to dismiss Appalachian's counterclaim for a declaratory judgment in the absence of a justiciable controversy concerning the

---

[20] OCGA § 9-11-12 (b).

[21] *Charming Shoppes, Inc. v. Black*, 252 Ga. 207 (312 SE2d 604) (1984); *Electronic Data Systems Corp. v. Heinemann*, 217 Ga. App. 816, 820 (7) (459 SE2d 457) (1995).

[22] OCGA § 9-11-65 (a) (2) provides: "Before or after the commencement of the hearing of an application for an interlocutory injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application."

[23] (Citation and punctuation omitted.) *A & D Asphalt Co. v. Carroll & Carroll of Macon*, 238 Ga. App. 829, 830 (1) (520 SE2d 499) (1999). See also *Gwinnett County v. Vaccaro*, 259 Ga. 61, 62 (1) (376 SE2d 680) (1989).

[24] *Cox Enterprises v. Nix*, 273 Ga. 152 (538 SE2d 449) (2000).

[25] Id.; see also *Gwinnett County*, supra.

enforceability of the Disposal Agreement.[26]

> A declaratory judgment is authorized when there are circumstances showing a necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest.[27]

We construe the Declaratory Judgment Act liberally, and "merely require the presence in the declaratory action of a party with an interest in the controversy adverse to that of the petitioner."[28] We conclude from the evidence presented at the hearing that a justiciable controversy existed. The parties had attempted to revise the Disposal Agreement but could not agree upon the circumstances under which it would terminate. Appalachian faced uncertainty with regard to its future actions under that Agreement. "This is not an improper use of the declaratory relief procedure."[29] Accordingly, the trial court did not err in denying RTS's motion to dismiss.

4. RTS additionally maintains that the trial court erred in ruling that the Disposal Agreement was void because it lacked a territorial limit. In this regard, Section 1 of the Agreement requires Appalachian to deliver all of its qualifying waste to the Pine Bluff Landfill. Proctor explained the significance of this restriction at the hearing, testifying that it required Appalachian to haul to the Pine Bluff Landfill waste that it picked up from any locale. He further testified that this restriction impeded Appalachian's ability to expand into other markets, because the transportation cost of hauling waste from further territories to Pine Bluff would be prohibitive.

The trial court characterized this restriction as an "exclusive dealing" provision and found it void as an unreasonable restraint of trade.[30] We have not previously addressed the type of agreement at issue in this case. However, "Georgia law provides substantial protection and latitude to covenants ancillary to the sale of a business because the covenants are a significant part of the consideration for

---

[26] OCGA § 9-4-2 (b); see also *Baker v. City of Marietta*, 271 Ga. 210, 214-215 (1) (518 SE2d 879) (1999).

[27] (Citation and punctuation omitted.) *Baker*, supra at 214 (1).

[28] *Enron Capital &c. Corp. v. Pokalsky*, 227 Ga. App. 727, 729 (1) (b) (490 SE2d 136) (1997).

[29] Id. at 729 (1) (a).

[30] The term "exclusive dealing" is normally associated with contracts for the sale of goods under the UCC. See OCGA § 11-2-306 (2). See also *PCS Joint Venture v. Davis*, 219 Ga. App. 519 (465 SE2d 713) (1995).

the purchase of the business."[31] A restrictive covenant executed ancillary to the sale of a business "will be upheld if the restraint imposed is not unreasonable, is founded on a valuable consideration, . . . is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public."[32]

In this case, the trial court's order granting expedited declaratory relief does not reflect application of the correct standard. Accordingly, we reverse the grant of declaratory relief to Appalachian, and remand for the trial court to review the Disposal Agreement using the degree of scrutiny appropriate for the sale of a business. In resolving this question of law, the trial court shall provide the parties with notice and the opportunity for a hearing in accordance with OCGA § 9-11-56 (c).

5. Finally, RTS urges that we consider supplemental enumerations of error filed pursuant to Supreme Court Rule 25, which provides as follows:

> In the event a record is supplemented pursuant to OCGA § 5-6-41 (f) or § 5-6-48 (d), any party wishing to present an issue in this Court relating to the trial court proceeding wherein the record was supplemented must first raise the issue before the trial court and then file additional enumerations of error and a brief within 10 days after docketing of the supplemental record in this Court or after the trial court rules on the issue raised, whichever date is later.

Because the appeal was initially filed in the Supreme Court and transferred to this Court, RTS urges that we permit the filing of the supplemental brief and enumerations of error so as not to penalize it for filing in the wrong court. It is not necessary to consider this contention, however, because the brief was untimely filed. The supplemental record was filed on August 1, 2003, and the brief was filed on August 13. Therefore, RTS's motion for leave to file a supplemental brief is denied.

*Judgment affirmed in part and reversed in part and case remanded. Johnson, P. J., and Eldridge, J., concur.*

---

[31] (Footnote omitted.) *Attaway v. Republic Svcs. of Ga.*, 253 Ga. App. 322, 325 (558 SE2d 846) (2002). See also *Jenkins v. Jenkins Irrigation*, 244 Ga. 95 (259 SE2d 47) (1979).

[32] (Footnote omitted.) *West Coast Cambridge v. Rice*, 262 Ga. App. 106, 108 (1) (584 SE2d 696) (2003).

DECIDED MARCH 29, 2004 —
RECONSIDERATION DENIED APRIL 14, 2004 — 

McKenna, Long & Aldridge, Henry F. Sewell, Jr., Sarah McCormack, for appellants.

Gambrell & Stolz, Seaton D. Purdom, Robert G. Brazier, Steven G. Hall, for appellees.