A05A1131. CITY OF ATLANTA et al. v. SOUTHERN STATES POLICE BENEVOLENT ASSOCIATION OF GEORGIA et al.
(623 SE2d 557)

BERNES, Judge.

This is an appeal from the trial court's order granting partial summary judgment to the plaintiffs on their claims for declaratory and permanent injunctive relief pertaining to three City of Atlanta defined benefit pension plans. The three pension plans are the Fire Fighters Pension Fund, which covers firefighters employed by the City of Atlanta; the Police Officers Pension Fund, which covers police

officers employed by the City of Atlanta; and the General Employees Pension Fund, which covers employees of the City of Atlanta and the Atlanta Board of Education (collectively, the "City of Atlanta Pension Funds"). After entertaining cross-motions for summary judgment, the trial court ruled that the board of trustees for each of the three City of Atlanta Pension Funds have the exclusive authority to hire a third-party administrator to handle the administration of pension benefit payments and to obtain advice from independent legal counsel on matters regarding their authority and duties. The trial court also permanently enjoined the City of Atlanta and other defendants[1] from interfering with the decisions on these matters made by the board of trustees for the Fire Fighters Pension Fund and Police Officers Pension Fund. The City of Atlanta now appeals. For the reasons set forth below, we affirm.

The essential facts are not in dispute. Separate boards of trustees administer the three City of Atlanta Pension Funds. Each board includes an appointee of the Mayor of the City of Atlanta, the Chief Financial Officer of the City of Atlanta, a City Council member, and members elected from active and retired employees.

Unhappy with the City of Atlanta's administration of the pension funds, the boards of trustees of the Fire Fighters Pension Fund and Police Officers Pension Fund adopted resolutions to hire a third-party administrator to perform benefit administration services for the respective pension plans. On January 30, 2003, both boards signed agreements with Administrative Services, Inc. ("ASI") for this purpose.[2]

On February 17, 2003, the Atlanta City Council adopted an ordinance entitled "An Ordinance To Amend The City of Atlanta Pension Laws (General, Police and Fire). . . ." The ordinance provided in part:

> Any contract entered into by the Board of Trustees on or after January 1, 2003 which affects the administrative staffing, management, or operation of the pension fund shall

---

[1] The defendants in this case are the City of Atlanta; Shirley Franklin, in her capacity as Mayor of the City of Atlanta; Cathy Woolard, in her capacity as President of the Atlanta City Council; Rick Anderson, in his capacity as Chief Financial Officer of the City of Atlanta; and several individuals in their official capacities as members of the Atlanta City Council. The defendants will be referred to collectively as the "City of Atlanta" or the "City."

[2] The General Employees Pension Fund did not adopt such a resolution or enter into an agreement with ASI. However, Angela Green, a plaintiff and elected member of that pension board, averred that she "want[s] to make a motion to the General Employees Pension Fund Board of Trustees to obtain a third party administrator to ensure the prompt and accurate payment of benefits to retirees," but felt constrained from doing so based on the legal position taken by the City of Atlanta on this issue.

require the consent of the City by adoption of a Resolution and approval by the Mayor. Any such contract which does not comply with the requirements of this Ordinance shall be null and void.

Subsequently, the City Attorney sent letters to the board chairpersons for the Fire Fighters Pension Fund and Police Officers Pension Fund advising them that it had come to the City Attorney's attention that both boards had voted to hire outside legal counsel to advise them on pension matters. The letters took the position that the City Attorney had sole authority to render legal advice to the pension boards and sole authority to determine if there was any conflict of interest in doing so. The letters further advised that "the Board[s] [are] not authorized to engage the services of outside counsel" unless and until the matter had been discussed and authorized by the City of Atlanta Law Department.

In response to requests from the boards of the Fire Fighters Pension Fund and Police Officers Pension Fund, the City Attorney issued a memorandum dated July 15, 2003 rendering an additional legal opinion concerning the hiring of a third-party administrator and outside legal counsel. The City Attorney acknowledged that the City Council, through its February 17 ordinance, could not retroactively invalidate a lawful contractual obligation entered into by the pension funds with ASI. However, the City Attorney ultimately concluded that any deficiency in the February 17 ordinance was irrelevant because the pension boards lacked authority to independently contract with a third-party administrator in the first instance, thus rendering the boards' actions ultra vires and making the respective signed agreements between the pension boards and ASI null and void from their inception. Additionally, the City Attorney reiterated her conclusion that neither pension board had authority to hire independent legal counsel without prior consultation and approval from the City of Atlanta Law Department.

Plaintiffs commenced this action on December 19, 2003. The plaintiffs in this case are not the respective pension boards themselves. Rather, plaintiffs include participants in the three City of Atlanta Pension Funds, elected members from each of the three pension boards, and three organizations that advocate for the interests of current and future participants in the City of Atlanta Pension Funds. They sought a declaratory judgment clarifying that, among other things, the three pension boards had authority under Georgia law to independently contract for third-party administrators to administer benefit services and to hire outside legal counsel without interference from the City of Atlanta. Plaintiffs also requested an

interlocutory and permanent injunction restraining the City of Atlanta from interfering or preventing the pension boards from hiring a third-party administrator and outside legal counsel.[3]

The City of Atlanta timely answered. Thereafter, the parties filed cross-motions for summary judgment. Plaintiffs sought partial summary judgment on their claims for declaratory judgment and a permanent injunction regarding the hiring of a third-party administrator and outside legal counsel, while the City sought summary judgment on all claims. After oral argument and full briefing from the parties, the trial court denied the City of Atlanta's summary judgment motion and granted the plaintiffs' motion for partial summary judgment. The trial court issued a declaratory judgment and permanently enjoined the City of Atlanta from interfering with decisions on these matters made by the respective pension boards for the Fire Fighters Pension Fund and Police Officers Pension Fund.[4]

On appeal, the City of Atlanta asserts multiple grounds for why the trial court erred in granting plaintiffs' motion for partial summary judgment. The City claims that: (1) plaintiffs lack standing to bring this suit; (2) there is no actual or justiciable controversy warranting the entry of a declaratory judgment; (3) the pension boards have no independent authority to contract for a third-party administrator or to hire outside legal counsel; (4) there is no evidence in the record and a lack of sufficient findings of fact and conclusions of law to support entry of a permanent injunction; and (5) the permanent injunction lacked the requisite specificity required by OCGA § 9-11-65 (d). We will address each claim of error in turn.

1. The City of Atlanta argues that plaintiffs lack standing to bring their claims for permanent injunctive relief and declaratory relief. The City emphasizes that plaintiffs do not represent the pension boards themselves and have not submitted any evidence showing that they have been authorized to "stand in the shoes" of the respective boards. Furthermore, the City argues that plaintiffs do not have standing because they have not alleged any ultra vires conduct by the City.[5] We reject the City's arguments.

---

[3] Additionally, plaintiffs sought a writ of mandamus and attorney fees pursuant to OCGA § 13-6-11. Plaintiffs later withdrew their mandamus claim. Plaintiffs did not seek summary judgment on their request for attorney fees, and so that claim is not discussed in this opinion.

[4] The trial court did not grant a permanent injunction with respect to the General Employees Pension Fund.

[5] An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

(Citation and punctuation omitted.) *Aldridge v. Ga. Hospitality & Travel Assn.*, 251 Ga. 234, 236

(a) Permanent Injunctive Relief. Plaintiffs need not show that they were authorized to bring suit on behalf of the respective pension boards in order to sue for permanent injunctive relief. OCGA § 9-6-24 provides: "Where the question is one of public right and the object is to procure the enforcement of a public duty, no legal or special interest need be shown, but it shall be sufficient that a plaintiff is interested in having the laws executed and the duty in question enforced."[6] Questions concerning the oversight and management of public pension funds implicate public rights and duties such that suits brought pursuant to OCGA § 9-6-24 are authorized. *Arneson v. Bd. of Trustees of the Employees' Retirement System of Ga.*, 257 Ga. 579 (1) (361 SE2d 805) (1987). However, in order to have standing to bring suit against a municipality under OCGA § 9-6-24, a plaintiff must allege acts by the municipality that constitute ultra vires conduct. *Newsome v. City of Union Point*, 249 Ga. 434, 437 (291 SE2d 712) (1982). "For the action to be considered ultra vires, it must appear that the action taken was beyond the scope of the powers that have been expressly or impliedly conferred on the municipality." Id.

The City of Atlanta's contention notwithstanding, plaintiffs have alleged ultra vires conduct by the City. Plaintiffs have alleged that the City of Atlanta, through its City Council and Law Department, has refused to recognize, implement, or cooperate with any decision by the pension boards to hire a third-party administrator or outside legal counsel. See Complaint Pars. 26, 28-30. According to plaintiffs, the City has repeatedly claimed that the City executive branch has sole authority to procure third-party administration and that the City Law Department has sole authority to render legal advice to the pension boards and to decide whether outside legal advice is warranted. See id. Furthermore, plaintiffs have alleged that the Atlanta City Council has attempted to interfere with and supersede pension board decisions by passing an ordinance attempting to retroactively nullify the third-party administration contracts signed with ASI. See Complaint Par. 26.

As we explain in detail below, Georgia law does not confer such authority over the pension boards to the City of Atlanta, meaning that any refusal by the City to recognize, implement, or cooperate with the pension boards' decisions on these matters falls outside the scope of

---

(1) (304 SE2d 708) (1983). Other than alleging a failure to get board authorization to bring this case and a lack of ultra vires conduct, the City has not separately challenged the association standing of the three advocacy organizations named as plaintiffs.

[6] Although OCGA § 9-6-24 is found in the "Mandamus" article of Title 9, Chapter 6 of the Georgia Code, the Supreme Court of Georgia "has held that its principles are not confined to mandamus cases, and has authorized its use as a basis for standing to seek injunctive relief." (Citations omitted.) *Brissey v. Ellison*, 272 Ga. 38, 39, n. 4 (526 SE2d 851) (2000).

the City's lawful powers. Accordingly, we conclude that plaintiffs met their burden of alleging conduct by the City that is ultra vires, and, therefore, properly established that they have standing to bring their claim for permanent injunctive relief.[7] See *League of Women Voters of Atlanta-Fulton County v. City of Atlanta*, 245 Ga. 301, 303 (1) (264 SE2d 859) (1980) (plaintiffs had standing to bring equitable suit in order to determine scope of municipal official's authority to make certain appointments).

(b) Declaratory Relief. We likewise conclude that plaintiffs need not show that they were authorized to bring suit on behalf of the respective pension boards in order to sue for declaratory relief. In order to have standing under the Declaratory Judgment Act, OCGA § 9-4-1 et seq., plaintiffs are only required to show that the issuance of a declaratory judgment is necessary "to settle and afford [them] relief from uncertainty and insecurity with respect to rights, status, and other legal relations." OCGA § 9-4-1. "Declaratory relief is available where a legal judgment is sought that would control or direct future action,"[8] under circumstances where that action might jeopardize or affect the rights, liabilities, or interests of the party seeking the declaratory judgment. See *Head v. DeKalb County*, 246 Ga. App. 756, 760 (2) (542 SE2d 176) (2000); *Royal Lepage Real Estate Svcs. of Atlanta v. Spalding Partners, Ltd.*, 192 Ga. App. 284, 284-285 (1) (384 SE2d 424) (1989).

It is clear that all the plaintiffs in this case have an interest in having resolved whether the pension boards may independently hire a third-party administrator and outside legal counsel without interference from the City of Atlanta. Plaintiffs are not only elected members of the respective pension fund boards, but also participants in the three City of Atlanta Pension Funds and three organizations that advocate for the interests of current and future participants in those funds. As fiduciaries who owe duties to the beneficiaries of the pension funds, the pension board members clearly have an interest in how the pension funds are administered and in having resolved the scope of their powers and duties. Likewise, current and future participants in the pension funds clearly have an interest in how the funds are administered and in having resolved the scope of the powers and responsibilities of the pension board members who serve

---

[7] The City notes that the trial court appears to have concluded that plaintiffs did not have to allege ultra vires conduct in order to establish standing to seek injunctive relief. "However, we will affirm the decision of a trial court that is right for any reason." (Citation and footnote omitted.) *Strickland v. Auto-Owners Ins. Co.*, 273 Ga. App. 662, 666 (2) (615 SE2d 808) (2005).

[8] (Citation omitted.) *Enron Capital & Trade Resources Corp. v. Pokalsky*, 227 Ga. App. 727, 729 (1) (a) (490 SE2d 136) (1997).

as their fiduciaries. For these reasons, we conclude that plaintiffs have standing to bring their claim for declaratory relief against the City of Atlanta.

2. The City of Atlanta next argues that there is no actual or justiciable controversy justifying the entry of a declaratory judgment. We disagree.

Under the Declaratory Judgment Act, a trial court is authorized to enter a declaratory judgment "[i]n cases of actual controversy" and in "any civil case . . . that the ends of justice require that the declaration should be made." OCGA § 9-4-2 (a), (b). See also *Baker v. City of Marietta*, 271 Ga. 210, 213 (1) (518 SE2d 879) (1999). "For a controversy to justify the making of a declaration, it must include a right claimed by one party and denied by the other. . . ." (Citations and punctuation omitted.) *Action for a Clean Environment v. State*, 217 Ga. App. 384, 385 (457 SE2d 273) (1995). "[N]o declaratory judgment may be obtained which is merely advisory, . . . or which merely answers a moot or abstract question." (Citations and punctuation omitted.) *Baker*, 271 Ga. at 214 (1).

Here, the record plainly shows an actual controversy between the City of Atlanta and the pension boards of the Fire Fighters Pension Fund and the Police Officers Pension Fund. As discussed above, both pension boards have approved resolutions to obtain third-party administration and have signed agreements with ASI to serve as the third-party administrator of the funds. Both pension boards also have indicated their desire to hire outside legal counsel. The City of Atlanta, through the Atlanta City Council and the City Law Department, has refused to recognize, honor, cooperate with, or implement any of these decisions. There is nothing in the record to suggest that the resolutions or the signed agreements with ASI have been rescinded or that the pension boards have retracted their positions on these matters. As such, an actual controversy is present, justifying the trial court's rendering of a declaratory judgment.

It is a closer question whether an actual or justiciable controversy exists with respect to the General Employees Pension Fund, since that pension board has not passed a resolution or signed an agreement to hire a third-party administrator or outside legal counsel. Nevertheless, we conclude that the justiciable controversy requirement has been met under the particular circumstances of this case. "We construe the Declaratory Judgment Act liberally, and merely require the presence in the declaratory action of a party with an interest in the controversy adverse to that of the petitioner." (Punctuation and footnote omitted.) *RTS Landfill v. Appalachian Waste Systems*, 267 Ga. App. 56, 63 (3) (598 SE2d 798) (2004). See also *Enron Capital & Trade Resources Corp.*, 227 Ga. App. at 729 (1) (a). Several of the plaintiffs are members of the board of trustees for the

General Employees Pension Fund who take the position that the board has statutory authority to independently hire a third-party administrator and outside legal counsel without any involvement or approval from the City of Atlanta or its Law Department. In contrast, there are one or more defendants (including the City of Atlanta Chief Financial Officer) who also sit on the pension board but who take the opposite position. Given this internal board disagreement, the pension board "face[s] uncertainty with regard to its future actions." *RTS Landfill*, 267 Ga. App. at 63 (3). Moreover, in light of the substantial similarity between the legal status of the General Employees Pension Fund and the other two pension funds, the ends of justice support resolving these questions in an efficient and streamlined manner in one suit. Accordingly, this case "is not an improper use of the declaratory relief procedure." (Punctuation and footnotes omitted.) Id.

For these reasons, the trial court did not err in determining that an actual and justiciable controversy exists in the present suit. Plaintiffs were entitled to proceed with their claim for a declaratory judgment.

3. In addition to its procedural arguments, the City of Atlanta argues that the trial court erred in granting plaintiffs' request for a declaratory judgment because the pension boards purportedly have no independent authority to contract for a third-party administrator or to hire outside legal counsel. Our review of the relevant statutory framework leads us to conclude otherwise.

> In construing a legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impracticable consequences, the court simply construes it according to its terms and conducts no further inquiry. Further, statutes are to be construed in accordance with their real intent and meaning and not so strictly as to defeat their legislative purpose, and statutory construction must square with common sense and sound reasoning.

(Citations and punctuation omitted.) *City of Atlanta v. Miller*, 256 Ga. App. 819, 820 (1) (569 SE2d 907) (2002). Mindful of these interpretive principles, we turn to the pension statutes and City Charter provisions at issue in this case in order to determine whether the pension boards have authority independent of the City to hire a third-party administrator and outside legal counsel.

(a) Third-Party Administration. The statute creating the City of Atlanta Fire Fighters Pension Fund was enacted in 1924 with the purpose of establishing a fund to provide retirement and disability benefits to firefighters employed by the City of Atlanta. See Ga. L.

1924, p. 167 et seq. The enacting statute provided that "there is hereby established, to serve without pay, a board of trustees whose duties it shall be to manage said funds which shall be kept by the City Treasurer of such cities as a separate fund." Ga. L. 1924, p. 167, § 6. The statute further provided that "[t]his board shall make all rules for the payment of [pension benefit] funds to those entitled to receive the same." Ga. L. 1924, p. 167, § 7. Although the statutory framework has been amended multiple times since 1924, the authority of the board to "manage" the funds and "to make all rules for the payment of [pension benefit] funds" has not been changed and remains in effect. See Charter and Related Laws of the City of Atlanta §§ 6-421 (b); 6-422 (2004) (hereinafter, "Related Laws").

In turn, the statute creating the City of Atlanta Police Officers Pension Fund was enacted in 1925 to provide retirement and disability benefits to police officers employed by the City of Atlanta. See Ga. L. 1925, p. 228 et seq. The enacting statute contains language virtually identical to that found in the statute enacting the Fire Fighters Pension Fund authorizing the board of trustees to "manage said funds" and to "make all rules for the payment of [pension benefit] funds to those entitled to receive the same." Ga. L. 1925, p. 228, §§ 6, 7. This authority of the board of trustees remains in effect. See Related Laws §§ 6-281 (b); 6-283 (2004).

Finally, the statute creating the City of Atlanta General Employees Pension Fund was enacted in 1927 to provide retirement and disability benefits to officers and employees of the City of Atlanta and the Atlanta Board of Education. See Ga. L. 1927, p. 265 et seq. The language of the enacting statute differed somewhat from the enacting statutes for the Fire Fighters Pension Fund and Police Officers Pension Fund. In particular, the statute provided "[t]hat there is hereby established a board of trustees, to serve without pay, whose duty it shall be to see that the provisions of this Act are carried out." Ga. L. 1927, p. 265, § 4. The statute establishing the General Employees Pension Fund was amended in 1941, but the duty "to see that the provisions of the Act are carried out" was not and remains in effect. See Related Laws § 6-141 (b) (2004). Moreover, language was added in 1941 that remains in effect (except for minor grammatical changes) and provides that the board

is authorized to make all necessary rules for the carrying out of the provisions of this Act, to reconcile conflicts therein, if any should exist, and to provide for the equitable disposition of any matter not specifically covered by the provisions of this Act, provided, that all of such rules must be consistent with the terms and spirit of such Act.

Ga. L. 1941, p. 468, § 1. See Related Laws § 6-141 (b) (2004).

We will not construe the expansive language of these pension statutes in a manner that will render the language meaningless or reduce it to mere surplusage. See *Houston v. Lowes of Savannah, Inc.*, 235 Ga. 201, 203 (219 SE2d 115) (1975). Accordingly, we conclude that the board of trustees for the three City of Atlanta Pension Funds have broad authority to appoint a third-party administrator to perform benefit administration services for the respective pension plans. With regard to the Fire Fighters Fund and Police Officers Fund, this authority is given by the statutory language providing the boards with power to "manage" the pension funds and "to make all rules for the payment of [pension benefit] funds." With regard to the General Employees Pension Fund, this authority is conferred by the statutory language stating that the pension board is authorized "to see that the provisions of the Act are carried out," "to make all necessary rules for the carrying out of the provisions of this Act," and "to provide for the equitable disposition of any matter not specifically covered by the provisions of this Act." Any other reading of these provisions would unnecessarily curtail the authority of the pension boards to carry out their fiduciary responsibilities for the benefit of public employees in a flexible and efficient manner. See generally *Employees Retirement System &c. v. Baughman*, 241 Ga. 339, 341 (2) (245 SE2d 282) (1978) (pension laws should be liberally construed in a manner that best favors pensioners).

Nevertheless, the City of Atlanta emphasizes that the three respective pension boards have been given specific statutory authority to contract for an independent actuary and an independent investment counselor. See Related Laws §§ 6-37 (n), (r); 6-222 (n), (q); 6-367 (n), (q). Invoking the doctrine of expressio unius est exclusio alterius,[9] the City argues that the express mention of independent actuarial and investment services in the pension statutes implies the exclusion of the authority in the boards to contract for a third-party administrator. We disagree. "[F]or the [expressio unius] doctrine to apply, it must appear that a complete enumeration or list normally would have included that which was omitted, thus making omission from the statute significant or indicative of legislative intent." *Long v. State*, 271 Ga. App. 565, 569 (2) (610 SE2d 74) (2005). Given the expansive language found in the pension statutes regarding board authority that we have already discussed, we do not believe that the omission of a specific reference to board authority to contract for a

---

[9] "Expressio unius est exclusio alterius" refers to the principle of statutory construction "that the express mention of one thing implies the exclusion of another thing." *Long v. State*, 271 Ga. App. 565, 569 (2) (610 SE2d 74) (2005).

third-party administrator is significant, since there would be no reason for the General Assembly to believe that such a reference was even necessary. The General Assembly rightly could assume that the more narrow power was implicitly included in the award of the broader power. Thus, we reject the City's contention that the doctrine of expressio unius applies in this context.

We likewise reject the City of Atlanta's contention that the City executive branch has been conferred the sole authority, through its normal procurement procedures (see City of Atlanta Code of Ordinances § 2-1193), to decide whether to hire a third-party administrator for the pension funds. Those procedures have no bearing on this case, since the Atlanta City Charter makes clear that the City of Atlanta has not been granted authority to interfere with or supersede management decisions by the pension boards over whether to hire a third-party administrator. Significantly, the 1996 Atlanta City Charter provides that "any boards . . . which derive their powers from general law [such as the pension boards at issue here] shall continue to exercise such powers." Atlanta City Charter § 3-401 (i). This provision evidences a clear legislative intent to permit the respective pension boards to retain their preexisting management authority free of interference from the City of Atlanta. Nor has the Atlanta City Council taken any legislative steps consistent with the City Charter to modify the existing pension laws in order to obtain greater authority over the decisions of the pension boards. See Atlanta City Charter § 3-507.[10]

Accordingly, based on the plain language of the pension statutes and the Atlanta City Charter, we conclude that the pension boards for the three City of Atlanta pension funds have the authority to hire a third-party administrator without interference from the City of Atlanta. Our conclusion accords with the general interpretative principle that "[a]ll municipal charters are strictly construed, and powers which are not expressly, or by necessary implication, conferred upon the corporation cannot be exercised by it." (Citations and punctuation omitted.) *Monticello, Ltd. v. City of Atlanta*, 231 Ga. App.

---

[10] Under the 1983 Georgia Constitution, local governments are given "[t]he power to maintain and modify heretofore existing retirement or pension systems, including such systems heretofore created by general laws of local application by population classification." 1983 Ga. Const., Art. IX, Sec. II, Par. III (a) (14). However, the Atlanta City Charter § 3-507 requires that before the Atlanta City Council may modify existing pension laws, there must be an investigation and report from an independent actuary, written recommendations provided by the affected pension boards, written recommendations provided by the City Attorney and Chief Financial Officer, and a two-third affirmative vote of the City Council. It is undisputed that Atlanta City Charter § 3-507 has not been utilized by the Atlanta City Council to modify the pension laws in any manner relevant to the issues raised in this case.

382, 384 (1) (499 SE2d 157) (1998). The trial court did not err in granting summary judgment to plaintiffs on this issue.

(b) Outside Legal Counsel. We further conclude that the expansive statutory language pertaining to the three City of Atlanta Pension Funds that already has been discussed likewise authorizes the pension boards to independently hire outside legal counsel to advise them on their authority and duties without input or interference from the City of Atlanta Law Department.

It is true that the statutory language pertaining to the three City of Atlanta Pension Funds provides that "[t]he city attorney shall without extra compensation render such legal services as such board of trustees shall require." See Related Laws §§ 6-37 (s); 6-287; 6-428 (2004). However, contrary to the City's argument, this language does not impose a duty upon the respective pension boards to obtain approval from the City Legal Department before hiring or consulting with outside counsel. Rather, it imposes a duty upon *the Law Department* to provide free legal services to the pension boards, when those boards otherwise request it.

Nor does the City of Atlanta Code of Ordinances § 2-396 preclude the pension boards from hiring outside legal counsel without City Law Department approval. Section 2-396 provides:

> The department of law is vested with complete and exclusive authority and jurisdiction in all matter of law relating to the executive branch of the city government and of every department, bureau, office, institution, commission, committee, board and other agency thereof. Every department, bureau, office, institution, commission, committee, board and other agency of the city government is prohibited from employing counsel in any manner whatsoever, unless otherwise specifically authorized by law. . . .

City of Atlanta Code of Ordinances § 2-396. This Code provision is not relevant to this case. The plain language of the provision makes clear that it applies to boards, departments, and agencies within the City of Atlanta government. By negative implication, the provision does not apply to independent boards that derive their existence from State law rather than from the Atlanta City Charter or Code of Ordinances. Consequently, Code of Ordinances § 2-396 has no application to the pension boards of the three City of Atlanta Pension Funds.

4. The City of Atlanta further argues that the trial court erred in granting a permanent injunction in favor of the Fire Fighters Pension Fund and the Police Officers Pension Fund. The City contends that entry of an injunction was improper because the undisputed evidence

of record allegedly failed to support it. The City further asserts that the trial court's order should have contained findings of fact and conclusions of law specifically determining that the present action constitutes a clear and urgent case, that vital necessity justifies the issuance of the injunction, and that plaintiffs have no adequate remedy at law. Finally, the City contends that the trial court failed to balance the conveniences of the parties.[11] All of the City's arguments are unavailing.

In determining whether the trial court's grant of a permanent injunction was proper, "the standard of review on appeal is whether or not the trial court manifestly abused its discretion. A trial judge manifestly abuses his discretion when he grants an injunction adverse to a party without any evidence to support such judgment and contrary to the law and equity." (Punctuation and footnote omitted.) *Harris v. Gilmore*, 265 Ga. App. 841, 843 (3) (595 SE2d 651) (2004). Entry of a permanent injunction is appropriate in clear and urgent cases where there is a vital necessity to prevent a party from being damaged and left without an adequate remedy at law. OCGA § 9-5-8; *Lewis v. City of Atlanta*, 274 Ga. 296, 297 (553 SE2d 611) (2001); *Conner v. Conner*, 269 Ga. 112, 114 (2) (499 SE2d 54) (1998). In addition, the trial court must weigh and balance the convenience of the parties in exercising its discretion over whether to grant a permanent injunction. *Bishop Eddie Long Ministries v. Dillard*, 272 Ga. App. 894, 901 (2) (613 SE2d 673) (2005).

Our review of the record leads us to conclude that the trial court did not manifestly abuse its discretion by entering a permanent injunction against the City of Atlanta. The uncontroverted record reflects competing, contradictory legal positions taken by the pension boards of the Police Officers Pension Fund and the Fire Fighters Pension Fund on the one hand, and the City of Atlanta on the other, over whether the pension boards can independently hire a third-party administrator and outside legal counsel. Neither side has backed down.[12] Moreover, there is an ongoing refusal by the City to recognize, implement, or cooperate with the pension boards' decisions, as well as evidence in the record that the City has no qualms about seeking to retroactively nullify or otherwise cast doubt on the

---

[11] The City also argues that the grant of a permanent injunction was improper because plaintiffs purportedly lack standing, and because the injunction allegedly was predicated on the trial court's erroneous grant of a declaratory judgment in favor of plaintiffs. These arguments have been discussed and rejected in prior divisions of this opinion.

[12] Without elaboration, the City of Atlanta asserts that the pension boards have decided to "abide by" the legal opinion issued by the City Attorney. However, the City does not provide any citations to the record to support its position on this point, and we have found nothing in the record indicating that the pension boards for the Fire Fighters Pension Fund and Police Officers Pension Fund have retracted their former positions or resolutions addressing these matters.

enforceability of any contracts between the pension boards and third parties regarding these matters.

In contrast, the City has failed to point to any alternative, adequate remedy at law that could be pursued by plaintiffs in this case. This is clearly not a case where monetary damages are available, and the City has not pointed to any administrative mechanisms that could be properly utilized to resolve this dispute. And, while the City argues that the conveniences of the parties weigh against the entry of a permanent injunction because "the effect of the injunction could be to devastate the City treasury," the City has cited to no record evidence to support this speculative contention.[13]

Under these circumstances, entry of a permanent injunction was authorized. There was ample uncontroverted evidence before the trial court supporting the entry of an injunction in favor of the Fire Fighters Pension Fund and Police Officers Pension Fund.

The City of Atlanta argues that the trial court's order nevertheless is deficient because it does not contain findings of fact and conclusions of law specifically determining that the present action is a clear and urgent case where there is a vital necessity to prevent plaintiffs from being damaged and left without an adequate remedy at law. Under OCGA § 9-11-52 (a), "[i]n ruling on interlocutory injunctions and in all nonjury trials in courts of record, the court shall upon request of any party made prior to such ruling, find the facts specially and shall state separately its conclusions of law." However, there is no similar provision mandating findings and conclusions in the context of a permanent injunction issued upon the grant of summary judgment. See, e.g., *Dixie Diners Atlanta v. Gwinnett Fed. Bank*, 211 Ga. App. 364, 366 (1) (439 SE2d 53) (1993) (noting that trial courts are not required to make findings of fact and conclusions of law when granting summary judgment). Compare *United Cos. Lending Corp. v. Peacock*, 267 Ga. 145, 146 (1) (475 SE2d 601) (1996) (remand necessary when trial court failed to make specific findings of fact before granting a permanent injunction following a bench trial, when such findings were requested by the defendant). Accordingly, the trial court was not required to enter specific findings of fact and conclusions of law to justify its entry of a permanent injunction to plaintiffs.

Lastly, the City argues that the trial court erred because the order entered by the trial court does not on its face show that the court weighed the conveniences of the parties before granting a permanent injunction. However, we presume that the trial court knew the law

---

[13] We also note that the City's argument concerning the potential effect of the injunction on the public treasury appears to be predicated on the City's concern that the trial court's order is not specific enough. We discuss the problems with this argument infra in Division 5.

and faithfully performed its duty to weigh and balance the convenience of the parties even though there are no express findings or conclusions on the issue. See *Johnson v. Equicredit Corp.*, 238 Ga. App. 380 (1) (517 SE2d 353) (1999); *In the Interest of A. L. L.*, 211 Ga. App. 767, 770 (5) (440 SE2d 517) (1994). "We will not presume . . . error where that fact does not affirmatively appear in the record." (Citation omitted.) *Johnson*, 238 Ga. App. at 380 (1). There is nothing in the record affirmatively showing that the trial court failed to weigh and balance the conveniences of the parties before granting plaintiffs a permanent injunction. Hence, the City's argument is without merit.

5. In its final enumeration of error, the City of Atlanta contends that the permanent injunction entered by the trial court is unenforceable for lack of specificity under OCGA § 9-11-65 (d). Significantly, however, the record reflects that the City filed, but later withdrew, a motion seeking to have the trial court clarify the injunction.

> Where it is contended that an injunction is so vague or indefinite that the party enjoined entertains doubt as to what he might or might not do under the terms of such order the proper procedure is to ask the trial court for modification or construction.

(Citations omitted) *DeRose v. Holcomb*, 226 Ga. 289, 289-290 (2) (174 SE2d 410) (1970). See also *Ponce de Leon Condo. v. DiGirolamo*, 238 Ga. 188, 191 (4) (232 SE2d 62) (1977). "Therefore[,] the remaining enumeration of error is without merit and the judgment of the trial court must be affirmed." *DeRose*, 226 Ga. at 290 (2).

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 18, 2005 — 

*Fellows, Johnson & La Briola, Henry D. Fellows, Jr., Laurie E. Dugoniths*, for appellants.

*Jacobs, Slawsky & Barnett, Norman J. Slawsky, Mary C. Cooney, Grady K. Dukes*, for appellees.