Evelyn M. STEPHENS, as Executrix Under the Last Will and Testament of J.C. Hyde, Plaintiff,

v.

The TRUST FOR PUBLIC LAND, a California Non–Profit Corporation, Defendant.

Civil Action No. 1:05–CV–1366–RWS.

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 2, 2007.

---

Carl L. Sollee, Office of Carl L. Sollee, Atlanta, GA, George Melton Mobley, Jr., Kevin A. Doyle, Lokey, Mobley & Doyle, LLP, Atlanta, GA, Richard Aaron Newton, Richard A. Newton, P.C., Atlanta, GA, Leo W. Clifton, Office of Leo W. Clifton, Sr., Austell, GA, for Plaintiff.

Ronald T. Gold, Wagner, Johnston & Rosenthal, P.C., Atlanta, GA, Mark E.

Bergeson, Alembik, Fine & Callner, Atlanta, GA, W. Reese Willis, III, McCalla, Raymer, Patrick, Cobb, Nichols & Clark, LLC, Roswell, GA, for Defendant.

## *ORDER*

STORY, District Judge.

Now before the Court are (i) Defendant's Motion for Summary Judgment [102]; (ii) Defendant's Motion for Oral Argument [104]; (iii) Plaintiff's Motion to Strike [134]; (iv) Defendant's Motion to Compel [149]; (v) Plaintiff's Motion for Leave to File Sur–Reply [174]; (vi) Plaintiff's Motion for Summary Judgment [178]; (vii) Plaintiff's Motion for Oral Argument [180]; (viii) Plaintiff's Motion to Strike [202]; (ix) Defendant's Motion for Sanctions [206]; (x) Plaintiff's Motion for Protective O rder and Motion to Quash [208]; (xi) Defendant's Motion to Strike [209]; (xii) Defendant's Motion to Take Deposition From Richard S. Myrick, Jr., Richard A. Newton, Jr., and the Myrick Company LLC [215]; and (xiii) Plaintiff's Motion for Protective Order and Motion To Quash Subpoena Regarding the Deposition of Richard Newton, Jr. [221]. After considering the entire record, the Court enters the following Order.

## Background

This case arises out of a contract for the sale of roughly 135 acres of farm land bordering the Chattahoochee River in Cobb County, Georgia ("the Hyde Farm").[1]

In 1955, J.C. Hyde conveyed the Hyde Farm to his two sons, J.C. Hyde, Jr. and W.H. Hyde, who lived on and farmed the property for the remainder of their lives.[2] (Compl. [1–4] ¶¶ 5–6.) In 1987, W.H. Hyde died testate, leaving his one-half undivided interest in the Hyde Farm to his brother, J.C. Hyde, Jr. (*Id.* ¶ 6.) In order to satisfy the state and federal estate taxes owed as a result of W.H. Hyde's death, J.C. Hyde, Jr. and Evelyn Stephens, as executrix of W.H. Hyde's estate (collectively "Seller"), entered into a Purchase and Sale Agreement and Right of First Offer ("Sale Agreement" or "Agreement") with Defendant. (*Id.* ¶ 8; *see also* Ex. E [1–10].) Under the terms of that Agreement, the Hyde Farm was divided into three parts: Tract A, Tract B, and the Remaining Property. (Sale Agreement, pmbl. at 1, ¶ 2, Exs. B–1, B–2.) Defendant agreed to purchase, and Seller agreed to sell, Tract A at a purchase price of $28,750.00 per acre. (*Id.* ¶ 2(a).) Additionally, Defendant agreed to purchase, and Seller reserved the right to sell at Seller's option, Tract B or some portion thereof at the same price if the sale was necessary to satisfy certain of Seller's tax obligations. (*Id.* ¶ 2(b).) Finally, Defendant was granted for a period of 20 years a preemptive "Right of First Offer" ("RFO") to purchase the Remaining Property,[3] or any portion thereof which Seller desired to sell, at a price to be determined by a specified appraisal process.[4] (*Id.* pmbl., ¶ 20.)

---

1. The facts stated herein are taken from the Complaint [1–4], documents attached thereto and incorporated therein by reference, *see* Fed.R.Civ.P. 10, and the undisputed facts as submitted by the parties in support of, and in opposition to, the cross-motions for summary judgment currently pending before the Court.

2. At the time of the conveyance from J.C. Hyde to his two sons, the Hyde Farm consisted of approximately 127 acres.

3. Under the terms of the Sale Agreement, the Remaining Property was comprised of all parts of the Hyde Farm not including Tracts A or B, as well as any portion of Tract B not sold to Defendant in order to satisfy Seller's tax liabilities. (Sales Agreement pmbl. ¶ 2(b).)

4. The preemptive right granted under the RFO is akin to a right of first refusal, except that the sale price is fixed by an appraisal process rather than an acceptable offer from

Tracts A and B, which together comprised 40.211 acres, were conveyed to Defendant at the stated price of $28,750.00 per acre. This property was then conveyed by Defendant to the United States of America and incorporated into the Chattahoochee National Recreation Area.[5] The United States, through the National Park Service, in turn granted J.C. Hyde, Jr. an agricultural license to continue to farm the property free of charge for the remainder of his life.

In March 2004, J.C. Hyde, Jr. passed away, devising his estate to his four sisters or their heirs and naming Evelyn Stephens, like his brother before him, as the executrix of his estate. Thereafter, in April 2005, Plaintiff initiated this action in the Superior Court of Fulton County, Georgia seeking *inter alia* a declaratory judgment that the RFO is, for numerous reasons, invalid and/or unenforceable, as well as monetary damages, and attorney's fees. Defendant answered, counterclaimed, and removed the action to this Court. Both parties now move for summary judgment.

## Discussion

### I. Preliminary Matters

Before turning to the merits of the parties' Motions for Summary Judgment, several preliminary matters must be addressed.

### A. Motion for Leave to File Sur-reply

Plaintiff has filed a Motion requesting leave to file a surreply in opposition to Defendant's Motion for Summary Judgment. Neither the Federal Rules of Civil Procedure nor the Local Rules of this Court contemplate the routine filing of briefs following the movant's reply. *See Fedrick v. Mercedes–Benz USA. LLC,* 366 F.Supp.2d 1190, 1197 (N.D.Ga.2005) (declining to permit surreply). "To allow such surreplies as a regular practice would put the court in the position of refereeing an endless volley of briefs." *Garrison v. N.E. Ga. Med. Ctr., Inc.,* 66 F.Supp.2d 1336, 1340 (N.D.Ga.1999) (declining to permit surreply). Rather, such filings will typically be accepted by the Court only in unusual circumstances, such as where a movant raises new arguments or facts in a reply brief, or where a party wishes to inform the Court of a new decision or rule implicating the motion under review. *Cf., e.g., Fedrick,* 366 F.Supp.2d at 1197 ("valid reason for ... additional briefing exists ... where the movant raises new arguments in its reply brief").

---

a third party. Unlike an option to purchase, which grants the holder of the option the power to compel the sale of property by an unwilling owner, the holder of a preemptive right has only the right to receive an offer to buy the property. Thus, the owner's willingness to sell the property on the specified terms is a prerequisite for a preemptive right to "ripen" into an option to purchase that property. Where the owner of the property is unwilling to sell, the holder of the preemptive right has no power to compel the seller to do so. *See Hasty v. Health Service Centers, Inc.,* 258 Ga. 625, 373 S.E.2d 356, 357 (1988) ("A preemptive right merely sets a requirement that when the owner decides to sell the person holding the preemptive right must be

offered the opportunity to buy."); *see generally* 3 Corbin on Contracts § 11.3.

**5.** On December 28, 1992, Defendant conveyed Tract A to the United States at a purchase price of $33,442.49 per acre. On April 5, 1993, Defendant conveyed Tract B to the United States at a purchase price of $33,451.93. (Compl.¶¶ 11–12.) Under the terms of the Sale Agreement, the parties expressly acknowledged that the purchase price of $28,750 paid by Defendant might be less than the fair market value of the property, and that Seller may elect to consider any difference between the purchase price of the property and the fair market value to be a charitable donation to Defendant. (Sale Agreement ¶ 31.)

In this case, Defendant's Reply Brief directly addresses arguments raised by Plaintiff in her Opposition to Defendant's Motion for Summary Judgment. Accordingly, the Court finds a sur-reply unwarranted and Plaintiff's Motion for Leave to File a Sur–Reply is **DENIED.**

### B. Motion for Sanctions

Defendant has filed a Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11. In that filing, Defendant argues that sanctions should be imposed upon Plaintiff's counsel because Plaintiff's Motion for Leave to File a Sur–Reply "has no reasonable basis in the federal or local rules, is entirely unnecessary and duplicative, and was filed for no purpose other than to harass Defendant, increase costs, and delay the Court's ruling on Defendant's own pending Motion for Summary Judgment." (Mem. in Supp. of Mot. for Sanctions [206–1] at 3.)

A district court has discretion to award Rule 11 sanctions:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

*Massengale v. Ray,* 267 F.3d 1298, 1301 (11th Cir.2001). "The standard for testing conduct under amended Rule 11 is reasonableness under the circumstances." *Anderson v. Smithfield Foods, Inc.,* 353 F.3d 912, 915 (11th Cir.2003) (internal quotations omitted).

On the record before it, the Court declines to impose sanctions under Rule 11. While the Court ultimately disagreed with Plaintiff's position that a surreply was necessary, *supra,* it does not believe that the mere request for leave to file a surreply was so objectively unreasonable as to warrant the imposition of sanctions. Accordingly, Defendant's Motion for Sanctions is **DENIED.**

### C. Motions for Oral Argument

Both parties have filed motions requesting oral argument on their respective Motions for Summary Judgment. The Court has reviewed filings in this matter, and has determined that oral argument on either motion is unnecessary. Accordingly, Defendant's Motion for Oral Argument [104] and Plaintiff's Motion for Oral Argument [180] are hereby **DENIED.**

### D. Motions to Strike

Plaintiff has filed a Motion to Strike the Affidavit of Christopher Deming [134]. Plaintiff seeks to exclude Mr. Deming's affidavit on grounds that it (1) directly contradicts his deposition testimony and (2) states a legal conclusion. The Court has reviewed the affidavit in question and finds no merit to Plaintiff's contention that the affidavit directly contradicts his deposition testimony, such that it should be excluded from consideration, and the Court declines to strike any part of his affidavit on that ground. On Plaintiff's second ground, however, Defendant offers no argument. As such, Plaintiff's Motion is **GRANTED IN PART and DENIED IN PART,** and the Court will strike Mr. Deming's statement in Paragraph 6 of his affidavit that the appraisal was sent "pursuant to Paragraph 20(a) [of] the Agreement."

Continuing in this vein, Plaintiff has filed a Motion to Strike the Second Affidavit of Christopher Deming [202], also on the ground that it is directly contradictory to his deposition testimony. Again, the Court has reviewed the filings of the parties, and finds that the two are not so contradictory as to warrant exclusion. Therefore, this Motion is **DENIED.**

Defendant has filed a Motion to Strike [209] the affidavit of Quintus Sibley which is attached to Plaintiff's Reply in Support of Her Motion for Summary Judgment. Plaintiff has not filed any opposition to this Motion, and as such, Defendant's Motion is **GRANTED as unopposed.**

### E. Motion to Conduct Depositions, Motions for Protective Orders, and Motions to Quash

Defendant has moved for leave to depose Richard Myrick, Jr., Richard Newton, Jr., and the Myrick Company LLC outside of the discovery period. (*See* Mot. to Take Depo. from Richard S. Myrick, Jr., Richard A. Newton, Jr., The Myrick Company, LLC [215].) Plaintiff has moved to quash those subpoenas and seeks a protective order. (*See* Mot. for Prot. Order and Mot. to Quash Subpoena Regarding Defendant's Deposition of Richard S. Myrick and the Myrick Company LLC [208]; Mot. for Protective Order Motion to Quash Subpoena Regarding the Deposition of Richard Newton, Jr. [221].) For the reasons that follow, Defendant's motion for leave to conduct these depositions is granted.

During the period leading up to this litigation, Plaintiff received three offers to purchase the Remaining Property from John Wieland Homes & Neighborhoods, a large Atlanta real estate developer, for various amounts and on various terms. The Myrick Company acted as the broker for those offers, which Plaintiff has consistently maintained both in her discussions with Defendant, and in her filings with this Court, were "unsolicited and unnegotiated."

Defendant did not seek to depose the Myrick Company or its agents during the discovery period. After the discovery period had lapsed, however, Defendant learned for the first time that Richard Newton, Jr., the son of Plaintiff's counsel, was employed by the Myrick Company. This fact had never been disclosed to Defendant, and Defendant promptly moved to take the depositions of Richard Myrick, Jr., Richard Newton, Jr., and the Myrick Company. Plaintiff opposes the taking of these depositions solely on the grounds that Defendant failed to act with reasonable diligence during discovery, and thus, should not be permitted to take these depositions outside of the discovery period.

It is undisputed that Richard Newton, Jr.'s employment with the Myrick Company was not disclosed, and the Court is unconvinced by Plaintiff's argument that Defendant did not act with reasonable diligence. Moreover, the Court recognizes that these depositions may produce information relevant to this case, insofar as the Sale Agreement clearly prohibits Plaintiff from offering the property for sale, or listing it for sale with a broker before first giving Defendant an opportunity to purchase the property under the terms of the RFO. As such, Defendant is entitled to take these depositions, and Defendant's Motion is **GRANTED.** The discovery period in this case is reopened for the limited purpose of deposing Richard Myrick, Jr., Richard Newton, Jr., and the Myrick Company LLC. These depositions shall be conducted not later than February 13, 2007. Defendant shall file any supplement to its Motion for Summary Judgment necessitated by these depositions not later than February 26, 2007.[6] Plaintiff shall file any

---

6. The parties are cautioned, however, that they should not view the opportunity to file supplemental briefs with the Court as a chance to rehash their prior positions. Thus, supplemental filings should only be made to the extent they are actually neces-sary to address issues made relevant by evidence discovered during, or as a result of, these depositions and which could not have been previously presented to the Court. Supplemental filings not in accordance with these instructions will not be considered.

response to Defendant's supplement not later than March 8, 2007. Defendant may file a reply to Plaintiff's response no later than March 16, 2007. Plaintiff's Motions for Protective Order and Motion to Quash [208, 221] are **DENIED.**

### F. Motion to Compel

Defendant has filed a Motion to Compel in which it seeks to (1) enforce certain subpoenas served on Plaintiff's expert, Russell Dabney, and (2) compel Mr. Dabney to produce certain identified documents, and submit to further questioning by Defendant. Plaintiff objects to this discovery on grounds that it would require the disclosure of protected work product.

Federal Rule of Civil Procedure 26 requires that parties identify any expert witness who will testify at trial and provide a written report prepared and signed by the witness. The report must contain a complete statement of all opinions to be offered as well as "the data or other information considered by the witness in forming the opinions." Fed.R.Civ.P. 26(a)(2)(B). Rule 26(a)(2)(B) "makes no distinction between types of privileged or protected materials," and the Advisory Committee Note to this Rule makes clear that " 'other information' considered by the expert must include any type of work product or other privileged information provided to the expert by the attorney who retained the expert." *Johnson v. Gmeinder*, 191 F.R.D. 638, 646 (D.Kan. 2000). Moreover, the term "consider" should be construed broadly,[7] and encompasses all "documents and information disclosed to a testifying expert in connection with his testimony ..., whether or not the expert relies on the documents and information in preparing his report." *In re Pioneer Hi–Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed.Cir.2001).

In this case, Plaintiff argues that the materials withheld constitute privileged work product because Mr. Dabney was operating, not in his capacity as Plaintiff's expert, but rather in his capacity as consultant. While the Court appreciates the distinction Plaintiff attempts to draw, courts have generally held that where an individual serves as both an expert and as a consultant, documents which are related to the expert's role as an expert must be produced, and that any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery. *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co.*, 171 F.R.D. 57, 62 (S.D.N.Y.1997). *Compare Beverage Marketing v. Ogilvy & Mather*, 563 F.Supp. 1013 (S.D.N.Y.1983) (requiring disclosure of "analysis of [plaintiffs expert] report" produced by testifying expert), *with Detwiler Trust v. Offenbecher*, 124 F.R.D. 545, 546 (S.D.N.Y.1989) (refusing to order disclosure where documents were reviewed by expert for purpose of proposing questions to particular witness at a deposition because this was unrelated to subject of expert's testimony). It appears that Plaintiff seeks to withhold certain preliminary opinions and reports generated by Mr. Dabney regarding previous appraisals of the value of the Remaining Property. Because Mr. Dabney has been identified as an expert and will testify as to the value of the Remaining Property, these documents are related to the Mr. Dabney's role as an

---

7. The Advisory Committee Note to Rule 26 provides that "[t]he expert report is to disclose the data and other information considered by the expert ... Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions-whether or not ultimately relied upon by the expert-are privileged or otherwise protected from disclosure when such persons are testifying or being deposed."

expert in this case. (*See* Pl.'s Ans. to First Interrogatories ¶ 6, Def.'s Reply to Mot. to Compel, Ex. I [149–10] (stating that "Mr. Dabney will testify as to the value of the ... Hyde Farm Property as of November 15, 2004, October 15, 2004, and June 15, 2005").) Therefore, these documents must be produced and Defendant is entitled to question Mr. Dabney about these documents. Accordingly, Defendant's Motion to Compel is hereby **GRANTED.** Plaintiff shall produce all documents responsive to Exhibit A to the Subpoena Duces Tecum to Russell Dabney, MAI, which is attached as Exhibit G to Defendant's Motion to Compel not later than ten (10) days from the date of this Order.[8]

Pursuant to Federal Rule of Civil Procedure 37, Defendant is entitled to recover its costs and reasonable attorney's fees associated with bringing this motion. Defendant shall submit a proper statement of its costs and fees not later than ten (10) days from the date of this Order. Plaintiff shall then have five (5) days within which to file a response.

## II. The Cross–Motions for Summary Judgment

In their cross-motions for summary judgment, both parties dispute the validity and enforceability of the Sale Agreement and RFO. As such, the Court will address that issue first. In light of the Court's decision to allow Defendant to depose Richard Myrick, Jr., Richard Newton Jr., and the Myrick Company LLC, the Court will reserve ruling on all remaining issues including whether Defendant is entitled to specific performance, and whether either party may recover their costs and reasonable attorney's fees pursuant to the Sale Agreement.

### B. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). "The moving party bears 'the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir.2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The applicable substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. *Id.* An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249–50, 106 S.Ct. 2505.

In determining a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the

---

8. As it appears that the same documents were withheld from production under both subpoenas served on Mr. Dabney, the Court expects that the documents at issue which are responsive to the second subpoena would similarly be responsive to the first. As such, the Court will only require Mr. Dabney to produce documents responsive to the second subpoena.

light most favorable to the non-moving party. *Patton v. Triad Guar. Ins. Corp.,* 277 F.3d 1294, 1296 (11th Cir.2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted); *see also Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts.").

### C. Validity of the Sales Agreement

#### 1. *Estoppel*

As an initial matter, Defendant contends that because J.C. Hyde, Jr. benefitted from the Sale Agreement both through the sale of Tracts A and B pursuant to its terms, and from receiving a license to use Tracts A and B during the period of his life, Plaintiff, who stands in his shoes, is estopped from challenging the validity of the Agreement and RFO. (Br. in Supp. of Mot. for Summ. J. [102–1] at 9–10; Reply Br. in Supp. of Mot. for Summ. J. [167, 168] at 8–10.) Defendant does not, however, clearly state the legal basis for its estoppel argument. That said, the cases cited by Defendant—specifically, *Green v. Ford Motor Company,* 146 Ga.App. 531, 246 S.E.2d 721 (1978), *Wright v. Newman,* 266 Ga. 519, 467 S.E.2d 533 (1996), and *Jackson v. Southern Pan and Shoring Co.,* 258 Ga. 401, 369 S.E.2d 239 (1988)—do not support its position that Plaintiff is es-

topped from raising a challenge to the Agreement. *Green* is a parol evidence case, and the passage cited merely stands for the proposition that one may not vary the written terms of an agreement under which the party has performed by parol evidence. *See Green,* 246 S.E.2d at 723 ("[P]arol evidence is inadmissible to vary the terms of a written contract or to contradict terms of a written contract which is valid on its face. [cit.] Having executed the contract and performed under it for eight months, including the execution of an extension agreement reaffirming the original contract, Green is now estopped to repudiate its written terms."). The *Wright* and *Jackson* cases apply the theory of promissory estoppel. In appropriate cases, this equitable doctrine may apply to render an otherwise invalid or unenforceable agreement enforceable. *See, e.g., Pepsi Cola Bottling Co. of Dothan, Ala., Inc. v. First Nat. Bank of Columbus,* 248 Ga. 114, 281 S.E.2d 579, 581 (1981) ("A party may enter into a contract invalid and unenforceable, and by reason of the covenants therein contained and promises made in connection with the same, wrongfully cause the opposite party to forego a valuable legal right to his detriment, and in this manner by his conduct waive the right to repudiate the contract and become estopped to deny the opposite party any benefits that may accrue to him under the terms of the agreement."). Promissory estoppel does not, however, foreclose challenge to the existence of an agreement in the first instance, *see, e.g., Foley Co. v. Warren Eng'g, Inc.,* 804 F.Supp. 1540, 1545 (N.D.Ga.1992) ("The threshold requirement of a promissory estoppel claim is, of course, that there be some enforceable promise by the defendant."); *Jackson v. Ford,* 252 Ga.App. 304, 555 S.E.2d 143, 148 (2001) ("Promissory estoppel 'does not apply ... to vague, indefinite promises.'" (quoting *Mooney v. Mooney,* 245 Ga.App.

780, 538 S.E.2d 864 (2000))), and will not save a contract which is unenforceable on public policy grounds, *see Milton Frank Allen Publications, Inc. v. Georgia Ass'n of Petroleum Retailers,* 224 Ga. 518, 162 S.E.2d 724, 730 (1968) ("Neither ratification nor estoppel can result from a contract which is void as against public policy.").

■ In this case, Plaintiff challenges the RFO in part on grounds that it is an unenforceable "agreement to agree," void as a contract to do an illegal thing, and an unreasonable restraint on alienation. Because Plaintiff's challenges go to the existence of a sufficiently definite promise, and to the question of whether that promise violates public policy, the Court cannot agree with Defendant that Plaintiff is estopped from challenging the RFO. Accordingly, the Court will consider first whether the Sale Agreement is valid and enforceable. In the event that the Court concludes that it is not, the Court will address the subsidiary question of whether, notwithstanding that invalidity or unenforceability, the doctrine of promissory estoppel may be applied to enforce its terms.

### 2. *Failure to fix the price term*

Having concluded that Plaintiff is not estopped from challenging the validity and enforceability of the Agreement, the Court turns now to address the numerous challenges to the RFO raised by Plaintiff. The first of these is that the RFO is unenforceable because it fails to establish the price term with sufficient certainty.

Under the RFO, the procedure for establishing the price of the Remaining Property is as follows. First, in the event that the seller wishes to sell the property, the seller is to provide a "Seller's Notice" to Defendant which is to be accompanied by an MAI appraisal not more than three months old. Defendant then may either accept this appraisal as the fair market value of the Remaining Property and elect to purchase the property at that price, or reject the appraisal and obtain another MAI appraisal of the Remaining Property. If Defendant elects the latter, the new MAI appraisal must be provided to the seller, who then has the option of accepting this second appraisal as the fair market value of the Remaining Property. If the seller accepts the new appraisal as the fair market value, then Defendant has the option of purchasing the property at that price. If, however, the seller rejects this new appraisal, the RFO provides that

> Seller and Buyer shall jointly appoint an MAI appraiser mutually satisfactory to them, at Buyer's expense, which appraiser shall consider Seller's appraisal and Buyer's appraisal, and determine a value to be the fair market value of the Remaining Property (which value shall be no lower than the lower, nor higher than the higher, of such appraisals), which determinations shall be binding on the Parties and conclusive as to the fair market value of the Remaining Property.

(Sales Agreement ¶ 20(c).) Defendant then has the option of purchasing the Remaining Property at the price set by the third, jointly appointed, MAI appraiser. (*Id.*)

The RFO neither fixes the identity of the third MAI appraiser who is to determine the fair market value of the Remaining Property, nor grants either party the authority to appoint that individual. Rather, the RFO requires that the parties agree in the future upon a mutually acceptable third appraiser. Plaintiff contends that this provision renders the RFO unenforceable for two separate, but related reasons: first, the provision fails to state the price term of the contract with sufficient certainty, and second, the provision constitutes an unenforceable "agreement

to agree" to an essential term of the contract. The Court addresses each of Plaintiff's contentions in turn.

### a. *The RFO provides a key by which the price may be calculated*

■ The RFO at issue here is, in many ways, analogous to an option contract for the sale of land. Under Georgia law, an option contract requires the same degree of definiteness as a general contract. *Wiley v. Tom Howell & Assocs., Inc.*, 154 Ga.App. 235, 267 S.E.2d 816, 817 (1980). The contract must be complete within itself and "either state the price to be paid for the property or set forth criteria by which it may be calculated." *Id.* (quotations omitted). A contract not providing a specified sale price, is sufficiently definite where there is "a 'key' or 'practical mode' provided within the contract by which a definite price may be ascertained." *Id.* The "key," however, cannot be provided by parole evidence. *Id.*

In the Court's view, whether the RFO is sufficiently specific is controlled by the Georgia Supreme Court's decision in *Miller v. McCullough*, 236 Ga. 666, 224 S.E.2d 916 (1976). In that case, the option contract provided that the selling price of the property would be "the appraised value of the property at the time of purchase based on an MAI Appraisal." *Id.* at 916–17. A majority of the Georgia Supreme Court held that provision to be sufficiently definite, explaining, "[t]his method would be the only equitable solution on a fluctuating market where it would be impossible to estimate the fair market value . . . years in the future." *Id.* at 917.

■ In this case, the RFO provides that the sale price of the Remaining Property will be the fair market value of the property as determined by either of two independent MAI appraisals. In the event that the parties do not accept either of these independent MAI appraisals as the fair market value, then a third MAI appraiser will be retained to serve as an expert arbiter, and will reconcile the two independent MAI appraisals and resolve the dispute as to the fair market value of the Remaining Property. (*See* Sale Agreement ¶ 20(c); *see also infra* Part C.6.) In that case, the fair market value as determined by the third MAI appraiser may be no higher than the high, and no lower than the low, of the two previously-obtained, independent MAI appraisals. Under *Miller*, this is more than sufficient to establish the purchase price.[9]

### b. *Agreement to agree*

■ Under Georgia law, "agreements to agree" are not enforceable. "It is well established that 'no contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means that there is no agreement to be enforced.'" *Kreimer v. Kreimer*, 274 Ga. 359, 552 S.E.2d 826, 829 (2001) (quoting *Moss v. Moss*, 265 Ga. 802, 463 S.E.2d 9 (1995)).

> If a contract fails to establish an essential term, and leaves the settling of that term to be agreed upon later by the parties to the contract, the contract is deemed an unenforceable "agreement to agree."

*Id.* That said, "deferral of agreement on a non-essential term does not invalidate an

---

**9.** Contrary to Plaintiff's argument, the Court does not read *Miller* as having turned on whether one party or the other possessed the power to select the appraiser. Rather, the Court reads *Miller* as standing for the rather unremarkable proposition that an appraisal conducted by an individual certified by the Appraisal Institute and according to that organization's standards, provides a reasonable means by which parties to a contract may determine a fair price for property intended to be sold far in the future.

otherwise valid contract." *Goobich v. Waters,* 283 Ga.App. 53, 640 S.E.2d 606, 608–09 (2006).

■ Plaintiff asks this Court to conclude that the identity of the third MAI certified appraiser constitutes an essential term of the contract, and that the parties' failure to agree to this term renders the entire Sale Agreement an unenforceable agreement to agree. (*See, e.g.,* Br. in Supp. of Pl.'s Mot. for Summ. J. [178] at 10–11.) The Court declines this request.

From its review of the RFO and the contract as a whole, the Court cannot conclude that the particular identity of the third appraiser constitutes an essential term of the Agreement, such that deferral of agreement on that point renders the entire Agreement unenforceable. The purpose of the RFO and its appraisal process was "to provide Defendant with the opportunity to purchase the Remaining Property at its fair market value." (Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 34.) When the RFO is considered in light of that purpose, the intent of the parties with respect to the third appraiser becomes clear. For example, there can be little doubt from the Agreement that the parties intended that any appraisal would be conducted by an MAI certified appraiser and according to the standards which govern such an appraiser, and that the parties viewed this provision as central to

the Agreement. This is entirely consistent with the purpose of the RFO, for it insures that a competent individual will render an opinion as to the fair market value of the property, and that the opinion rendered will accurately reflect its actual fair market value. In contrast, the only basis for concluding that the identity of the appraiser should be deemed essential is rooted in the notion that a particular appraiser would give a more or less favorable opinion as to the value of the property, that the parties were aware of this fact, and that they intended to use the appointment of the third appraiser to gain an advantage in the transaction such that the sale would occur at an increased or decreased price. But, that notion would be wholly inconsistent with the stated purpose, which was not to see that the property was sold at the highest price, or at the lowest price, but at a fair price. Moreover, the fact that the role of the third appraiser was confined to reconciling the two previously obtained MAI appraisals and fixing the value of the property within a defined and limited range further undermines the notion that the parties intended to use the appointment of the third appraiser to gain an advantage in the transaction. In view of the foregoing, the Court simply cannot conclude that the particular identity of the third appraiser was essential to the Agreement.[10] As such, deferring agreement on

---

10. In contradistinction to this case, consider the case of *Poulos v. Home Fed. Sav. & Loan Assn.,* 192 Ga.App. 501, 385 S.E.2d 135 (1989). There, the Georgia Court of Appeals refused to enforce an oral settlement agreement of a construction dispute where the agreement provided that repairs to the plaintiffs' property would be made by a "mutually agreeable" contractor, reasoning that it constituted an unenforceable agreement to agree to an essential term. This makes sense. At the time of that decision, no state license was required to serve as a contractor. *See* O.C.G.A. §§ 43–41–1 *et seq.* (establishing examination procedure and licensing require-

ment for residential and general contractors to become effective January 1, 2008). Thus, there was no implicit agreement even to a minimum level of competence. Beyond that, whether a given contractor is "acceptable" may turn on such subjective factors as an individual's impressions of the aesthetic appeal and quality of the contractor's work. Thus, it is hardly surprising that the *Poulos* Court deemed the identity of the person who would be tasked with performing the repairs to the plaintiffs' homes to be an essential term under the contract.

In contrast to a builder or other craftsman, however, an MAI appraiser operates based

that point does not relieve Plaintiff of her obligations under the Sale Agreement.

### 3. *Unreasonable restraint on alienation*

■ Plaintiff contends that the RFO is unenforceable because it constitutes an unreasonable restraint on alienation. The Court disagrees.

■ Under Georgia law, "in determining the validity of a preemptive right, a court must take into consideration its duration, price, and the purpose for which it was imposed." *RTS Landfill, Inc. v. Appalachian Waste Systems, LLC Inc.*, 267 Ga.App. 56, 598 S.E.2d 798, 802 (2004). Considering each of these factors, the Court concludes as a matter of law that the RFO does not unduly restrain alienation of the Remaining Property. First, with respect to duration, the RFO at issue here lasts for a period of 20 years. Under Georgia law, preemptive rights must be exercised within a reasonable period of time. *See Shiver v. Benton*, 251 Ga. 284, 304 S.E.2d 903, 906–07 (1983). The Court has found no Georgia case, and none has been cited to it, in which the reasonableness of a preemptive right lasting 20 years was considered. That said, the period is well within the range of reasonable as established by other state courts and legislatures, *see, e.g.*, Ala.Code § 35–4–76(a) ("No option to purchase any interest in land, other than an option limited in favor of a lessee and exercisable at a time not later than the end of the term of a lease or any extension or renewal thereof, or an option to repurchase reserved by the grantor in a deed, shall be valid or enforceable for a period of more than 20 years.");

Mass. Gen. Laws 184A § 5(a) ("An option in gross with respect to an interest in land or minerals or a preemptive right in the nature of a right of first refusal in gross with respect to an interest in land or minerals becomes invalid if it is not exercised within thirty years after its creation."); *Willson v. Strattan*, 2006 WL 287591, *3 (Mich.Ct.App. Feb.7, 2006) (option or right of first refusal with 20–year duration is not an unreasonable restraint on alienation), and the Court is convinced that a twenty-year period is reasonable under the circumstances of this transaction.

■ Second, with respect to price, the RFO fixes the price at the fair market value as determined by an appraisal process utilizing separate MAI appraisals. "In reaching the question of whether [a preemptive] right is an unlawful restraint on alienation the method of setting the price is critical." *Shiver*, 304 S.E.2d at 905. "It is generally agreed that an option restraint is reasonable if the option price is at market or appraised value." *Sander v. Ball*, 781 So.2d 527, 529 (Fla.Ct.App.2001) (citing Restatement of Property § 413 (1944)); *see also Lorentzen v. Smith*, 129 N.M. 278, 5 P.3d 1082, 1086 (2000) ("[A] right of first refusal is reasonable when it can be exercised by matching a current bona fide offer or a fair market appraisal."); *Drayson v. Wolff*, 277 Ill.App.3d 975, 214 Ill.Dec. 632, 661 N.E.2d 486, 492 (1996) (upholding right to repurchase property at price equal to lower of either offer from third party or market price determined by three appraisers); Restatement (Second) of Property: Donative Transfers § 4.4 illus. 3 (price fixed by three appraisers not

upon fixed standards and is employed to render an opinion as to the value of property which is capable of objective evaluation. Thus, it is not the identity of the appraiser, but rather his qualifications, the methods he employs, and the standards which will govern the appraisal process which are essential.

Having agreed to those qualifications and standards by unambiguously requiring MAI appraisals under the Sale Agreement, the parties were free to leave the appraiser's selection to a later date, and the election to do so does not render the Agreement unenforceable.

an unreasonable restraint on alienation); *cf. Metro. Transp. Auth. v. Bruken Realty Corp.*, 67 N.Y.2d 156, 501 N.Y.S.2d 306, 492 N.E.2d 379, 385 (1986) (upholding preemptive right to purchase property at price fixed by arbitration, stating " 'a market value fixed by arbitrators compelled to consider the price a willing seller would accept from a willing buyer at the time of sale can hardly be unreasonable, as a matter of law' "). In view of this well-established rule, the method of setting the price contained within the RFO is reasonable as a matter of law, and Plaintiff's numerous arguments to the contrary are without merit.[11]

Finally, with respect to the purpose of the RFO, the Court finds that it was imposed for entirely proper reasons. As Plaintiff admits, the purpose of the RFO was to allow Defendant an opportunity to purchase the Remaining Property at fair market value in the event that J.C. Hyde, Jr. or his heirs wished to sell it. In view of the undisputed facts that Defendant wished to acquire the entire Hyde Farm and would not have purchased Tracts A and B in the absence of the RFO, and in view of the manifest benefits that J.C. Hyde, Jr. received as a result of that purchase,[12] the Court readily concludes that the RFO was not imposed for an improper purpose.

In sum, having considered the price, duration, and purpose of the RFO, the Court concludes as a matter of law that it does not impose an unreasonable restraint on alienation. As such, the Court declines to declare the RFO void on this ground.

### 4. *Rule against perpetuities*

■ Plaintiff contends that the RFO is void because it violates the common law rule against perpetuities. The Court disagrees for two reasons.

First, Georgia has adopted the Uniform Statutory Rule Against Perpetuities. *See* O.C.G.A. § 44–6–200 *et seq.* According to the plain language of the statute, it governs all nonvested property interests created on or after May 1, 1990, O.C.G.A. § 44–6–205, and as such, applies to the RFO. The Uniform Statutory Rule Against Perpetuities modifies the traditional common law rule by incorporating a "wait and see" approach to perpetuities. *See* O.C.G.A. § 44–6–201(a). Under the Georgia rule against perpetuities, an interest which is not valid after applying the common law rule against perpetuities incorporated into the statute, may nevertheless become valid if it "either vests or terminates within 90 years after its creation." O.C.G.A. § 44–6–201(a)(2). Under this approach, it is not possible to determine whether an interest fails under the rule against perpetuities as of the date the period of the rule begins to run, unless it is clearly impossible for the interest to vest

---

11. The Court notes that many of Plaintiff's arguments on this issue are predicated upon the assumption that the appraisal process set out in the RFO will necessarily result in the Remaining Property being sold at a discount to fair market value. (*See, e.g.*, Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 18–21.) Contrary to Plaintiff's numerous assertions in this regard, the Court finds nothing in the terms of the RFO which would require that the property be sold at a discount, and no basis for that assumption in the record. *Compare RTS Landfill*, 598 S.E.2d at 803 (striking down right of first refusal where contract

required $500,000 discount from third party offer). As such, the Court declines to find the RFO's appraisal process unreasonable because it would necessarily require the property to be sold at a discount from its fair market value.

12. These benefits include not only finding a buyer willing to purchase only that fraction of the Hyde Farm necessary to satisfy his tax liabilities and those of his brother's estate, but also receiving a license to continue to use the property he just sold free of charge for the rest of his life.

within 90–years from its creation. *See* Restatement (Second) Property: Donative Transfers § 1.4 cmt. f.

The RFO at issue here expires 20 years from the date of its creation. Even assuming that some eventuality might occur which would prevent Defendant's interest from vesting within the 21–year time limit prescribed by O.C.G.A. § 44–6–201(a)(1), it is not clearly impossible for Defendant's interest to vest within the 90–year wait and see provision of O.C.G.A. § 44–6–201(a)(2). Thus, the Court would be required to wait and see whether it in fact vests within 90 years, and as such, the Court cannot declare the RFO void on its face for violating the rule against perpetuities.

Second, even assuming that Plaintiff is correct in arguing that the common law rule against perpetuities, and not the Uniform Statutory Rule, applies to the RFO, the Court would still conclude that the RFO does not violate the rule. Plaintiff's argument in this regard hinges on the fact that the RFO fails to fix the time for performance of the various steps in the appraisal process and closing. According to Plaintiff, these various "defects, individually or collectively, may push the vesting of the Remaining Property past 21 years [from] the date of the grant of the RFO and result in the violation of the rule against perpetuities." (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 26–27.)

It is true that the RFO does not fix the time for performance, and thus, Plaintiff is correct that it is conceivable that the process might be delayed to a date beyond 21 years from the date of the Sale Agreement. But, under such circumstances, Georgia courts imply a reasonable time for performance and hold that a period for performance which would violate the rule against perpetuities is per se unreasonable. *See Young v. Cass,* 255 Ga. 508, 340 S.E.2d 185, 186 (1986); *Read v. GHDC,*

*Inc.,* 254 Ga. 706, 334 S.E.2d 165, 166 (1985). Thus, even though no time for performance is fixed under the Agreement, the Court would imply a reasonable time which in no case may exceed 21 years from the date the Sale Agreement was executed. As such, the "defects" upon which Plaintiff relies do not result in a violation of the rule against perpetuities, and accordingly, the Court declines to hold the RFO invalid on this basis.

### 5. *Failure of conditions precedent*

■ Plaintiff contends that the Sale Agreement is not effective because a condition precedent was not satisfied. Specifically, Plaintiff points to Paragraph 34 of the Sale Agreement which provides:

*Approval by Buyer's Board of Directors.* This Agreement shall not be binding upon Buyer until it is approved by the Executive Committee of Buyer's Board of Directors. A meeting of such Executive Committee to consider the approval of this Agreement shall be held on or before March 31, 1992.

Plaintiff argues that because the Executive Committee of Defendant's Board of Directors approved the acquisition of Tracts A and B pursuant to the Sale Agreement, but did not approve the Sale Agreement itself, no binding contract as to the sale of the Remaining Property under the RFO was formed. The Court finds this argument unpersuasive.

As a general matter, the law of Georgia does not favor the defense of failure of a condition precedent which Plaintiff propounds.

Where a contract prescribes conditions precedent to a party's right to set up a cause of action or defense, and the terms are reasonable, the opposite party may usually successfully plead a failure to comply with the conditions, as a reason for the court's refusal to entertain the

action or defense. But forfeiture of rights is not favored, and the courts will readily seize upon circumstances arising in the subsequent conduct or transactions of the parties and imply a waiver, in order to prevent a forfeiture because of non-compliance with formal prerequisites.

*Consol. Fed. Corp. v. Cain*, 195 Ga.App. 671, 394 S.E.2d 605, 607 (1990) (quoting *McDaniel v. Mallary Bros. Mach. Co.*, 6 Ga.App. 848, 66 S.E. 146 (1909)).

■ More specifically, "[i]t is well recognized that a party to a contract may waive contractual provisions for his benefit." *Barranco v. Welcome Years, Inc.*, 260 Ga.App. 456, 579 S.E.2d 866, 869 (2003). Indeed, the Georgia courts have recognized that

> parties may, by their acts or conduct, waive a provision that their contract may not take effect or constitute a binding agreement unless it is approved by a designated person or agency, or unless it is formally approved by all the parties, and a provision that a contract shall not be binding until it is approved in writing by a designated officer of one of the parties may be waived by the party where the provision was inserted into the agreement solely for such party's protection.

*C.P.D. Chem. Co. v. Nat'l Car Rental Sys., Inc.*, 148 Ga.App. 756, 252 S.E.2d 665, 667 (1979) (quotations omitted).

In this case, Paragraph 34 which requires that Defendant's Executive Committee approve the Sale Agreement was for Defendant's benefit. It was clearly intended to insure that Defendant would not be obligated to go through with two significant real estate purchases—purchases which were evidentially dependent upon obtaining congressional appropriation—until funds were available and Defendant's Board of Directors had authorized the sale. Having approved its purchase of Tracts A and B, and fully performed to date under the Sale Agreement,[13] a reasonable juror would be compelled to conclude that Defendant waived any protections afforded it by Paragraph 34.[14] As such, the Executive Committee's failure to approve the Sale Agreement itself, as opposed to the purchase of Tracts A and B, does not constitute a failure of a condition precedent sufficient to relieve Plaintiff of the obligation to perform under the Agreement.

6. *Contract to do an illegal act, contract against public policy, and impossibility*

■ Plaintiff contends that the RFO is void as a contract to do an illegal act, void as a contract against public policy, and impossible to perform. As is discussed above, the RFO provides that in the event that both parties were to reject the appraisal submitted by the other,

---

13. The Court notes that having performed under the Sale Agreement and purchased Tracts A and B, Defendant is under no present obligation to purchase the Remaining Property under the RFO. Rather, the decision to go through with the purchase of the Remaining Property should Plaintiff elect to sell remains solely with Defendant. If Defendant does not wish to purchase the Remaining Property upon receiving Seller's Notice, it can simply decline. Thus, Plaintiff's contention that Paragraph 34 has some broad significance beyond the mandatory purchase of Tracts A and B is unavailing.

14. Plaintiff's argument that the non-waiver clause prohibits Defendant from waiving the protections of Paragraph 34 is also unpersuasive. It is equally well-established under Georgia law that even " 'a provision against waiver of contractual rights may itself be waived.' " *J.W. Truck Sales, Inc. v. Hartrampf Outdoor, L.L.L.P.*, 279 Ga.App. 544, 631 S.E.2d 750, 752 (2006) (quoting *J.E.M. Enter's v. Taco Pronto, Inc.*, 145 Ga.App. 573, 244 S.E.2d 253 (1978)).

Seller and [Defendant] shall jointly appoint an MAI appraiser mutually satisfactory to them, at [Defendant's] expense, which appraiser shall consider Seller's appraisal and [Defendant's] appraisal, and determine a value to be the fair market value of the Remaining Property (which value shall be no lower than the lower, nor higher than the higher, of such appraisals), which determination shall be binding on the Parties and conclusive as to the fair market value of the Remaining Property.

(Sale Agreement, ¶ 20(c).) Plaintiff argues that because the RFO purports to require the third appraiser to render an opinion as to the value of the Remaining Property that falls within a specified range (namely, between the values established by the two prior appraisals), the RFO requires that the third appraiser violate Georgia law which prohibits an appraiser from accepting

an independent appraisal assignment when the employment itself is contingent upon the appraiser's reporting a predetermined estimate, analysis, valuation, or opinion or where the fee to be paid is contingent upon the opinion, conclusions, analysis, or valuation reached or upon the consequences resulting from the appraisal assignment.

O.C.G.A. § 43–39A–18(b)(11); Ga. Comp. R. & Regs. 539-3-.02. As with Plaintiff's other challenges to the RFO, the Court disagrees that this provision renders the RFO void under Georgia law.

In Georgia, "[a] contract to do an immoral or illegal thing is void." O.C.G.A. § 13–8–1. "But a contract does not fall within this principle unless its purpose or object is illegal. The rule has no application 'where the object of the contract is not illegal or against public policy, but where the illegality is only collateral or remotely connected to the contract.'" *Douglas v. Bigley,* 278 Ga.App. 117, 628

S.E.2d 199, 207 (2006) (quoting *Shannondoah, Inc. v. Smith,* 140 Ga.App. 200, 230 S.E.2d 351 (1976)). Moreover, " '[i]t is not to be presumed that people intend to violate the law.'" *Buffington v. Sasser,* 184 Ga.App. 800, 363 S.E.2d 2, 6 (1988) (quoting *Equitable Loan & Sec. Co. v. Waring,* 117 Ga. 599, 44 S.E. 320, 321 (1903)). As such, " 'the language of their undertakings must, if possible, be so construed as to make the obligation one which the law would recognize as valid.'" *Id.* (quoting *Equitable Loan,* 44 S.E. at 321). That is to say, "[a]ll ambiguities are to be resolved in favor of legality and against illegality," and "[t]he contract is to be held illegal only when it will admit of no other construction." *Goodwin v. Trust Co. of Columbus,* 144 Ga.App. 787, 242 S.E.2d 302, 305 (1978) (quoting *Equitable Loan,* 44 S.E. at 321).

As an initial matter, the Sale Agreement and RFO are not void because the purpose of the contract is not illegal, and the alleged illegality is incidental to the contract. The undisputed evidence before the Court is that the purpose of the Sale Agreement, and specifically the RFO, was "to provide Defendant with the opportunity to purchase the Remaining Property at its fair market value." (Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 34.) There is nothing about this which is illegal. Moreover, the language at issue does not require Plaintiff or Defendant—the only parties to the Sale Agreement—to engage in illegal conduct. Rather, the act which Plaintiff contends would be illegal would be performed by the third appraiser—a third-party upon whom the Sale Agreement cannot impose any contractual obligations. As such, the Sale Agreement is not void for illegality. *See Crooke v. Gilden,* 262 Ga. 122, 414 S.E.2d 645, 646 (1992) (upholding contract against illegality challenge where "[n]othing in the contract casts upon either of the

parties the responsibility to perform any illegal activity").

What is more, the Sale Agreement and RFO are not void because they can be construed in favor of legality. The RFO states that the third MAI appraiser shall "consider Seller's appraisal and Buyer's appraisal, and determine a value" of the "Remaining Property." (Sale Agreement ¶ 20(c).) Beyond that, the Agreement is silent as to the nature of the third appraiser's role in setting the sale price of the Remaining Property. The Agreement does not explain what it means for the third appraiser to "consider" the two previous, independent appraisals, or state how they are to be "considered." As such, the Agreement is ambiguous.

In the Court's view, it is possible to construe the Agreement so as to avoid any possibility of illegality by construing the contract to require the third appraiser to act, not as an additional appraiser performing an "independent appraisal assignment" within the meaning of O.C.G.A. § 43–39A–18(11), but rather as a private, expert arbiter retained to settle a dispute as to the fair market value of the Remaining Property. Thus, the third appraiser serving in this capacity would not be retained to perform an independent valuation analysis, but rather only to "consider" the two appraisals previously obtained, and apply his knowledge, skill, and experience as an MAI appraiser to reconcile the two. *See* O.C.G.A. § 43–39A–20 (recognizing that appraisers may provide "specialized services" which may include "valuation and analysis work."); *cf. Skinner v. Smith,* 120 Ga.App. 35, 169 S.E.2d 365, 367 (1969) (explaining that fact that contract referred to person as appraiser and not arbitrator was immaterial where person was selected to make determination of fact to bring end to litigation).

This construction finds support in the other provisions of the RFO. At each of the first two stages of the valuation process, the parties agreed that they would obtain "an MAI *appraisal* of the Remaining Property," which they could "accept" as the fair market value of the Remaining Property. (Sale Agreement ¶ 20(a)-(c).) The third step of the valuation process, however, does not require the third appraiser to perform "an MAI appraisal" as is clearly required by the two previous steps. Rather, it requires only that the third MAI appraiser "consider" the other two "MAI appraisals," and determine a "value" to be assigned to the Remaining Property which is conclusive upon the parties. This difference in language is significant, and indicates that the parties did not intend for the third appraiser to perform an appraisal—much less an "independent appraisal assignment" as defined by the Georgia Code—but rather to merely apply his expertise to resolve a dispute as to the value of the property. So construed, the RFO in no way could require the performance of an illegal act, and as such, is not void for illegality.

Plaintiff relies upon this same purportedly required violation of O.C.G.A. § 43–39A–18(11) to argue that the Agreement is both void as a contract against public policy and impossible to perform. But, as construed above, the Agreement does not require an illegal act. Thus, Plaintiff's public policy and impossibility challenges fail as a matter of law.

Finally, Plaintiff contends that the RFO is impossible to perform because its performance is conditioned upon the discretionary act of a third party who refuses or is unable to act. This argument is similarly without merit, because no third party has yet refused to act. Accordingly, the RFO is not unenforceable on these grounds.

#### 7. *Conclusion*

Having addressed each of Plaintiff's challenges to the enforceability of the Sale Agreement, and having rejected each of those challenges, the Court concludes that the Purchase and Sale Agreement and Right of First Offer is valid and enforceable as a matter of law. As such, Defendant's Motion for Summary Judgment is **GRANTED** insofar as it relates to Plaintiff's claims seeking a declaration that the Sale Agreement is invalid and unenforceable; Plaintiff's Motion for Summary Judgment on these claims is correspondingly **DENIED.** The Court **RESERVES RULING** on the parties' Motions for Summary Judgment insofar as those Motions relate to other claims at issue in this case, including whether Defendant is entitled to specific performance of the Sale Agreement, and whether either party is entitled to recover costs and reasonable attorney's fees under the Agreement.

#### Conclusion

Plaintiff's Motion for Leave to File a Sur–Reply [174] is **DENIED;** Defendant's Motion for Sanctions against Counsel for Plaintiff [206] is **DENIED;** Defendant's Motion for Oral Argument [104] is **DENIED;** Defendant's Motion to Compel [149] is **GRANTED;** Plaintiff's Motion for Oral Argument [180] is **DENIED;** Plaintiff's Motion to Strike the Affidavit of Christopher Deming [134] is **GRANTED IN PART and DENIED IN PART;** Plaintiff's Motion to Strike [202] is **DENIED;** Defendant's Motion to Strike [209] is **GRANTED as unopposed;** Defendant's Motion to Take Deposition from Richard S. Myrick, Jr., Richard A. Newton, Jr., and The Myrick Company, LLC [215] is **GRANTED;** Plaintiff's Motion for Protective Order and Motion to Quash Subpoena Regarding Defendant's Deposition of Richard S. Myrick and the Myrick Company LLC [208] is **DENIED;** Plaintiff's Motion for Protective Order Motion to Quash Subpoena Regarding the Deposition of Richard Newton, Jr. [221] is **DENIED.**

Defendant's Motion for Summary Judgment [102] is **GRANTED IN PART** and Plaintiff's Motion for Summary Judgment [178] is **DENIED IN PART** insofar as the Sale Agreement is valid and enforceable under Georgia law. In view of the fact that Defendant's Motion to Take Deposition from Richard S. Myrick, Jr., Richard A. Newton, Jr., and The Myrick Company, LLC has been granted, the Court **RESERVES RULING** on Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment insofar as those Motions relate to other claims at issue in this case.

**SO ORDERED.**