## A07A0506. GILLEN v. THE STATE.
## A07A0712. MARSTON v. THE STATE.
### (649 SE2d 832)

SMITH, Presiding Judge.

In unrelated criminal actions, Victor Gillen and Margaret Marston pled guilty to trafficking in drugs. Gillen was sentenced to 15 years for trafficking between 200 and 400 grams of methamphetamine,[1] and Marston was sentenced to 25 years and a $1 million fine for trafficking 400 grams or more of cocaine.[2] Because both cases concern whether the trial court had discretion to suspend or probate these sentences under the general sentencing provisions of OCGA § 17-10-1 (a) (1), we have consolidated them for purposes of appeal. We affirm in both cases, however, holding that the trial court did not err in finding that pursuant to the specific trafficking statute, OCGA § 16-13-31 (g) (1), it was without authority to probate or suspend the sentences.

Although OCGA § 17-10-1 (a) (1) gives the trial court authority to suspend or probate all or any part of a sentence, the trafficking statute clearly provides that an "adjudication of guilt or imposition of sentence shall not be suspended, probated, deferred, or withheld prior to serving the mandatory minimum term of imprisonment prescribed by this Code section." OCGA § 16-13-31 (g) (1).[3] And "a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent." (Citation, punctuation and footnote omitted.) *Mann v. State*, 273 Ga. 366, 368 (1) (541 SE2d 645) (2001). The trial court was therefore correct in its conclusion that it was without authority to suspend or probate the sentences. *Moran v. State*, 170 Ga. App. 837, 842 (3) (318 SE2d 716) (1984).

The dissent argues that the general sentencing statute should prevail over the specific trafficking statute. However, there simply is no "indication of a contrary legislative intent" in this case. The 2006 amendment (adding OCGA § 17-10-6.2 to the exception of OCGA § 17-10-1 (a) (1)) does not demonstrate a legislative intent for OCGA § 17-10-1 (a) (1) to prevail over the specific trafficking statute. The legislature simply chose to add another class of crimes to the exception. Indeed, OCGA § 17-10-6.1 has been an exception to OCGA § 17-10-1 (a) (1) since 1994, so the fact that OCGA § 17-10-1 (a) (1) "was the last enacted statute" because it was amended in 2006 is irrelevant.

---

[1] See OCGA § 16-13-31 (e) (2).

[2] See OCGA § 16-13-31 (a) (1) (C).

[3] We note that OCGA § 16-13-31 (g) (2) does provide that the trial court may reduce or suspend a sentence in certain circumstances not applicable here.

The 2004 amendment is equally irrelevant. The General Assembly's removal of "in conformity with any mandatory minimum sentences required by law" relates to the first sentence in OCGA § 17-10-1 (a) (1), requiring the judge to impose "a determinate sentence" for a specific number of months or years. It does not relate to, or have any bearing on, the second sentence of the Code section, the one at issue here, governing the trial court's authority to suspend or probate.

Moreover, the maxim of expressio unius est exclusio alterius has never been used to resolve a *conflict* between two statutes. Rather, it is used to assume the deliberate omission of actions not listed in a statute and not otherwise addressed elsewhere. See, e.g., *Hammock v. State*, 277 Ga. 612, 615 (3) (592 SE2d 415) (2004) (mention in one subsection of statute that members of same family or household are excluded, and the lack of limiting language in two other subsections of statute, shows the legislature's intent to allow those subsections to apply between co-inhabitants); *Long v. State*, 271 Ga. App. 565, 569 (2) (610 SE2d 74) (2005) ("OCGA § 40-6-392 deals only with '(c)hemical tests for alcohol or drugs in blood'; it does not concern any other tests for sobriety, including the alco-sensor test and field sobriety tests").

Second, even if expressio unius est exclusio alterius could be applied to a conflict between two statutes, "it must appear that a complete enumeration or list normally would have included that which was omitted, thus making omission from the statute significant or indicative of legislative intent." *Long*, supra. Because OCGA §§ 17-10-6.1 and 17-10-6.2 are statutes that define certain *categories* of crimes (serious violent offenses and sexual offenses) and provide the sentencing guidelines for those categories, it does not appear that the list of these two exceptions normally would have included OCGA § 16-13-31 or any other *specific* criminal statute. Instead, any omission would be significant only with regard to a statute that defines classes or categories of crimes. See, e.g., *City of Atlanta v. Southern States Police Benevolent Assn. &c.*, 276 Ga. App. 446, 455 (3) (a) (623 SE2d 557) (2005) (statutory list of authorized third-party contractors not exclusive and maxim not applied).

"We must seek to effectuate the intent of the legislature, OCGA § 1-3-1 (a), and to give each part of the statute meaning and avoid constructions that make some language mere surplusage." (Citations omitted.) *Anderson v. State*, 261 Ga. App. 716, 719 (583 SE2d 549) (2003). The dissent's interpretation would make meaningless many statutes that employ similar language prohibiting the court from suspending, probating or deferring a sentence. See, e.g., OCGA

§§ 16-8-14 (theft by shoplifting); 16-5-23.1 (battery); 16-7-1 (burglary); 16-6-13 (prostitution, pimping or pandering). This cannot be the intent of the legislature.

*Judgments affirmed. Andrews, P. J., Johnson, P. J., Ellington and Adams, JJ., concur. Miller, J., concurs specially and Barnes, C. J., dissents.*

MILLER, Judge, concurring specially.

I concur fully with the majority opinion, because I believe that it represents a correct interpretation of both statutory and case law. I write separately, however, to emphasize that my decision does not represent an endorsement of mandatory minimum sentences as a matter of policy.

The problems with "mandatory minimums" are numerous and well documented, and have been articulated by judges, legal scholars, and practitioners alike. See, e.g., *Harris v. United States*, 536 U. S. 545, 570-571 (122 SC 2406, 2421, 153 LE2d 524) (2002) (Breyer, J., concurring); *In re Ellis*, 356 F3d 1198, 1220-1221 (9th Cir. 2004); *United States v. Alatorre*, 207 F3d 1078, 1080 (8th Cir. 2000) (Bright, J., concurring); Shimica Gaskins, Note: "Women of Circumstance" — The Effects of Mandatory Minimum Sentencing on Women Minimally Involved in Drug Crimes, 41 Am. Crim. L. Rev. 1533 (2004); Stephen M. Breyer, Federal Sentencing Guidelines Revisited, 14 Crim. Justice 28 (Spring 1999); Myrna S. Raeder, Rethinking Sentencing and Correctional Policy for Nonviolent Drug Offenders, 14 Crim. Justice 1, *53 (Summer 1999); Orrin G. Hatch, The Role of Congress in Sentencing: The United States Sentencing Commission, Mandatory Minimum Sentences, and the Search for a Certain and Effective Sentencing System, 28 Wake Forest L. Rev. 185, 192-196 (1993); Stephen J. Schulhofer, Rethinking Mandatory Minimums, 28 Wake Forest L. Rev. 199 (1993). See also Justice Anthony M. Kennedy, American Bar Association (ABA) Address (August 9, 2003) at the ABA Annual Meeting, August 9-10, 2003, San Francisco, CA (2003) ("I can accept neither . . . the wisdom[, the justice nor the necessity] of . . . mandatory minimum[s]. . . . In [all] too many cases [they] are . . . unjust.").

The foregoing authorities demonstrate in detail the fact that mandatory minimums negatively affect the fair administration of the criminal justice system, do not serve as a deterrent, and result in tremendous costs — both fiscal and otherwise — to law-abiding citizens. Mandatory sentences divest trial judges of their traditional discretionary authority, instead transferring "sentencing power to prosecutors, who can determine sentences through the charges they decide to bring." (Citations omitted.) *Harris v. United States*, supra, 536 U. S. at 571 (Breyer, J., concurring). See also *United States v.*

*Hiveley*, 61 F3d 1358, 1363-1364 (8th Cir. 1995) (Bright, J., concurring) (mandatory minimums, in effect, allow "non-judicial persons [to] send people to jail"); Justice Anthony M. Kennedy, supra ("The trial judge is the one actor in the system most experienced with exercising discretion in a transparent, open, and reasoned way. Most of the sentencing discretion should be with the judge, not the prosecutors.").

"[S]tatutory mandatory minimums . . . deny the judge the legal power to depart downward, no matter how unusual the special circumstances that call for leniency." *Harris v. United States*, supra, 536 U. S. at 570 (Breyer, J., concurring). Such mandates do not allow a trial judge to consider prior criminal history (or lack thereof), the impact on a defendant's family, or the defendant's history in the community. Nor do they allow a court to consider the degree of the defendant's culpability — i.e., whether he was a kingpin rather than a mule, whether he arranged the shipment of drugs or merely served as a lookout, or whether he led the conspiracy or was caught on the fringes thereof. Instead, mandatory minimums substitute the trial judge's discretion with a focus on one or two exclusive factors, such as the amount of drugs involved or whether the defendant was in possession of a firearm. See, e.g., OCGA §§ 16-13-31; 16-11-106. While clearly relevant in determining the length of a sentence, these factors should not be used as the exclusive means for determining either the length of the initial sentence or when a person should be eligible for parole.

In light of the numerous flaws inherent in mandatory minimum sentences, the citizens of our State would be better served by a legislative attempt to create a fair and rational sentencing scheme — i.e., by developing guidelines that permit trial judges to use their wisdom and expertise to consider *all* factors relevant to a defendant's sentence, including his or her degree of culpability.

BARNES, Chief Judge, dissenting.

Because I cannot agree that the General Assembly did not intend to accomplish any change in the law when it amended OCGA § 17-10-1 (a) in 2004 and 2006, I must respectfully dissent.

Before the 2004 amendment, sentences imposed pursuant to OCGA § 17-10-1 (a) were required to conform to any mandatory minimum sentences required by law. The 2004 amendment, however, removed from OCGA § 17-10-1 (a) (1) the requirement that sentences imposed must be *"in conformity with any mandatory minimum sentences required by law. . . ."* (Emphasis supplied.)

Following the amendment, OCGA § 17-10-1 (a) (1) read

the judge fixing the sentence shall prescribe a determinate sentence for a specific number of months or years which shall be within the minimum and maximum sentences prescribed by law as the punishment for the crime. The judge imposing the sentence is granted power and authority to suspend or probate all or any part of the entire sentence under such rules and regulations as the judge deems proper, including service of a probated sentence in the sentencing options system, as provided by Article 9 of Chapter 8 of Title 42, and including the authority to revoke the suspension or probation when the defendant has violated any of the rules and regulations prescribed by the court, even before the probationary period has begun, subject to the conditions set out in this subsection; provided, however, that such action shall be subject to the provisions of Code Section 17-10-6.1 [(Punishment for serious violent offenders)].

After the amendment, on its face the Code section authorized trial courts to suspend or probate any sentence subject only to the provisions of OCGA § 17-10-6.1, concerning serious violent offenders.

By removing *"in conformity with any mandatory minimum sentences required by law"* from the Code section the General Assembly obviously intended to achieve *some* result, and our rules of statutory interpretation demand that courts attach significance to the legislature's action in removing limiting language from a statute. *Transp. Ins. Co. v. El Chico Restaurants*, 271 Ga. 774, 776 (524 SE2d 486) (1999); *Humthlett v. Reeves*, 211 Ga. 210, 216 (2) (85 SE2d 25) (1954) (a legislative body should always be presumed to mean something by the passage of an act).

Further, courts "will not assume that the Legislature intended any provision of a statute to be without meaning," (citation omitted) *Douglas County v. Anneewakee, Inc.*, 179 Ga. App. 270, 273 (1) (346 SE2d 368) (1986), and we must presume that the General Assembly's failure to include the limiting language was a matter of considered choice. See *Hollowell v. Jove*, 247 Ga. 678, 683 (279 SE2d 430) (1981).

Whatever doubt may exist concerning the intention of the legislature in passing the 2004 statute is dispelled by an examination of the preamble of the Act. See *Moore v. Robinson*, 206 Ga. 27, 40 (6) (55 SE2d 711) (1949) ("there is no better source to which a court may go for the purpose of finding the legislature's meaning of an act passed by it" than the purpose of the act). The purpose stated in the amendment was

[t]o amend Title 17 of the Official Code of Georgia Annotated, relating to criminal procedure, and Title 42 of the Official

Code of Georgia Annotated, relating to penal institutions, so as to provide for comprehensive provisions regarding management of probationers; *to change certain provisions regarding suspension or probation of sentence;* . . . to provide for powers, duties, and authority of the . . . sentencing courts; . . . *to repeal conflicting laws; and for other purposes.*

(Emphasis supplied.) Act 595, General Assembly 2004 Regular Session. The only reasonable conclusion that can be drawn from the General Assembly's removal of the requirement for conformity with the mandatory minimum provisions is that it intended to change the existing law and give trial courts the "power and authority to suspend or probate all or any part of the entire sentence under such rules and regulations as the judge deems proper." Because of the comity requirement, this authority did not exist if mandatory minimums provided otherwise.

That the General Assembly intended for trial courts to have broad power to suspend or probate sentences generally after the 2004 amendment, and that it intended for the Code section to contain a complete list of any exceptions to the power to suspend or probate sentences, is further demonstrated by its actions in April 2006 when the General Assembly enacted Act 571, General Assembly 2006 Regular Session, which in Section 19 made OCGA § 17-10-1 (a) (1) also "subject to the provisions of [OCGA §] . . . 17-10-6.2 [(Punishment for sexual offenders)]" and in Section 31 repealed all laws or parts of laws in conflict.

To fully appreciate the importance of this amendment, one must understand its context. This amendment was part of the package of revisions to our law enacted to implement "Jessica's Law" in Georgia. See generally 23 Ga. St. U. L. Rev. 11-25 (2006). The purpose of the Act was to protect the public from recidivist sexual offenders, violent sexual offenders, and sexual offenders who preyed on children by increasing the mandatory minimum sentences for sex-related crimes. The Act also contained provisions prohibiting sex offenders from residing, working, or loitering near places where children might gather. The Act was one of the "nation's toughest sex offender laws." (Punctuation and footnote omitted.) Id. at 17. As part of the effort to increase the punishment for these sex offenders, the General Assembly amended OCGA § 17-10-1 (a) to except the sentences for these sex offenders from the provisions of the Code section giving the judge imposing the sentence "power and authority to suspend or probate all or any part of the entire sentence." By adding words to the Code section it may be presumed that the legislature intended some change in the existing law. *Undercofler v. Colonial Pipeline Co.*, 114 Ga. App. 739, 743 (152 SE2d 768) (1966).

If the trial courts had no authority to suspend or probate sentences generally, except for serious violent offenders, why was it necessary to add this further limitation on powers that did not exist? To reach the result offered by the majority, one must conclude that the General Assembly intended to do two futile acts: (1) remove the phrase "in conformity with any mandatory minimum sentences required by law" in 2004 and (2) add OCGA § 17-10-6.2 concerning punishment for sexual offenders to the exception in OCGA § 17-10-1 (a) in 2006. I refuse to reach that conclusion.

The majority further contends that OCGA § 16-13-31 (g) (1) deprives the trial court of the discretion to probate the sentence because the specific statute imposing the sentence for trafficking in cocaine controls over the general probation provisions of OCGA § 17-10-1 (a) and the 2004 amendment did not show a "clear legislative intent" to modify OCGA § 16-13-31 (g) (1).

When interpreting statutes,

the courts shall look diligently for the intention of the General Assembly. In so doing, the ordinary signification shall be applied to all words. Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly. In fact, where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden. Moreover, Georgia law provides that the express mention of one thing in an Act or statute implies the exclusion of all other things. In our reading of a statute, this Court is not authorized to disregard *any* of the words used therein unless the failure to do so would lead to an absurdity manifestly not intended by the legislature.

(Punctuation and footnotes omitted.) *Abdulkadir v. State*, 279 Ga. 122, 123 (2) (610 SE2d 50) (2005).

The conclusion that the General Assembly intended trial courts to have the authority to suspend or probate sentences is bolstered by the fact that in passing the amended Code section the General Assembly made the trial court's authority to probate or suspend sentences subject to the provisions of OCGA § 17-10-6.1, concerning punishment for serious violent offenders, and then even later made the authority subject to the provisions of OCGA § 17-10-6.2, concerning punishment for sexual offenders. By making the amended Act subject to those sentencing provisions, the General Assembly evidenced the clear intent that the exceptions stated therein would be the only ones, and that the Code section would apply to any other kind

of cases. Why else would those limitations be necessary? The majority does not address this question.

Additionally, even though the principle is often stated that a specific statute controls a general statute, the complete statement of the rule is that "a specific statute will prevail over a general statute, *absent any indication of a contrary legislative intent.*" (Citation omitted; emphasis supplied.) *Vines v. State,* 269 Ga. 438, 440 (499 SE2d 630) (1998). The majority's statement that the General Assembly has not shown such an intent is contrary to the amendments enacted by the General Assembly. Two ancient maxims of statutory construction show this to be true.

> Pursuant to the principle of statutory construction, "Expressum facit cessare tacitum" (if some things are expressly mentioned, the inference is stronger that those omitted were intended to be excluded) and its companion, the venerable principle, "Expressio unius est exclusio alterius" ("The express mention of one thing implies the exclusion of another"), the list of actions in [a statute] is presumed to exclude actions not specifically listed, and the omission of [additional maximum-minimum sentencing provisions] from [the statute] is regarded by the courts as deliberate.

(Citations omitted.) *Alexander Properties Group v. Doe,* 280 Ga. 306, 309 (1) (626 SE2d 497) (2006). An omission indicates legislative intent when a complete list normally would have included the omitted item. *Long v. State,* 271 Ga. App. 565, 569 (2) (610 SE2d 74) (2005).

If the legislature had not intended for the Code sections named in OCGA § 17-10-1 (a) (1) to be a complete list of statutes that are excepted from its probation, suspension, and parole provisions, it would not have deemed it necessary in 2006 to add OCGA § 17-10-6.2 to the list of exceptions. If the list in OCGA § 17-10-1 (a) is not complete, the exceptions given for punishments under OCGA §§ 17-10-6.1 and 17-10-6.2 are mere surplusage. Contrary to the majority's comment, these maxims are used, not to resolve conflict between OCGA § 17-10-1 (a), as amended, and any other Code sections, but to measure the scope of OCGA § 17-10-1 (a) itself.

Additionally, as amended OCGA § 17-10-1 (a) (1) was the last enacted statute, and our law requires this court to presume that it was "enacted by the legislature with full knowledge of the existing condition of the law and with reference to it." (Citations and punctuation omitted.) *First Nat. Bank &c. v. Sinkler,* 170 Ga. App. 668, 670 (1) (317 SE2d 897) (1984). Thus, we presume the General Assembly

knew that OCGA § 16-13-31, as well as other Code sections, contained mandatory minimum sentencing provisions probating or suspending sentences. Consequently, the General Assembly is presumed to know that by deleting the requirement that sentences imposed under OCGA § 17-10-1 (a) (1) be "in conformity with any mandatory minimum sentences required by law," the effect of the amendment would be to authorize trial courts to suspend or probate the sentence imposed, notwithstanding the provisions of OCGA § 16-13-31 (g) (1) or other such mandatory minimum provisions. Moreover, the General Assembly demonstrated this knowledge by retaining the exception granted for punishment of serious violent offenders and then later adding the exception for sex offenders.

Therefore, given the legislative history and the plain language of the Code section after the amendment, I must conclude that the legislature's intent was to authorize the trial courts to exercise discretion and in appropriate cases disregard the conflicting provision of OCGA § 16-13-31 (g) (1), and probate any sentence, except those specifically reserved in the amendment. To conclude otherwise requires one to deem that the legislature intended the effect of the amendments to be a nullity.

This result is consistent with the pronouncement in *Estrada v. State*, 269 Ga. App. 185, 186 (2) (603 SE2d 721) (2004) that "a judge has the power to probate all or part of a sentence," although it is not apparent from that case that the issues presented here were considered in reaching that conclusion. Similarly, reliance on *Andrews v. State*, 271 Ga. App. 162 (609 SE2d 119) (2004), was misplaced because *Andrews* does not address the issue presented here, it does not refer to OCGA § 17-10-1 (a) (1), and the amendment to that Code section was not effective until after the date Andrews was sentenced.

For these reasons, I would vacate the sentences imposed and remand both cases to the trial courts so that they could exercise the discretion granted them in OCGA § 17-10-1 (a), as amended, to probate or suspend the sentences imposed, if they were to deem that appropriate. Accordingly, I respectfully dissent from the majority opinion.

DECIDED JULY 16, 2007 — 

*Walter M. Chapman*, for appellant.

*Jewel C. Scott, District Attorney, Jonathan O. Oden, Assistant District Attorney*, for appellee.

*Bruce S. Harvey, Mark A. Yurachek*, for appellant.
*Kenneth W. Mauldin, District Attorney, James V. Chafin, Assistant District Attorney*, for appellee.